CHARLES H. PETET, Appellant, v. JOHN H. Mc-CLANAHAN et al., Judges of County Court of Buchanan County, et al.

Division One, April 6, 1923.

1. **PUBLIC ROAD:** Establishment: On Initiative Of County Court. Under Section 10636, Revised Statutes 1919, the county court, whenever of the opinion that a public necessity exists for the establishment of a public road or for the re-location of an existing road, may, of its own initiative, and without a petition of freeholders, by an order, duly entered of record, so declare, and direct the county highway engineer to survey, mark out and describe the road.

2. **EMINENT DOMAIN:** Construction of Statutes. Where private property is sought to be taken for a public use all statutory requirements must be fully and strictly complied with. But strict compliance does not necessarily mean a literal and exact compliance; in many respects substantial compliance will suffice.

3. ———: Public Road: Engineer's Report: Time of Filing: Publication of Notice. A proceeding under the statute (Sec. 10636, R. S. 1919), initiated by the county court, upon its own motion, to establish or re-locate a public road, is purely *ex parte* up to the time the county highway engineer files his report of the survey and the court orders publication of notice, and up to such time no interest of a land owner has been affected adversely, and consequently none of his rights is prejudiced by the fact that the engineer's report is not filed within the time mentioned in the court's order, or that the court did not "thereupon" or immediately cause notice of the proceedings to be published. The words of the statute requiring the engineer to file his report "within fifteen days" after the order directing him to make the survey, etc., and that the court shall "thereupon" cause notice of the proceeding to be published, are directory; and subsequent regular

Petet v. McClanahan.

proceedings are not invalidated by the fact that the engineer filed his report twenty-one days after the order was made, and that fifty-nine days thereafter the court ordered that notice be given by publication.

4. ———: ———: **Publication of Notice: Proven by Judgment Recitals.** That the publication of the notice of the proceeding to establish a public road complied with the statutory requirements may be proved by the judgment of the court, and it is not necessary that the original notice and proof of its publication be offered in evidence. The county court is a court of record, and its orders and judgments, made while acting judicially and within its jurisdiction, are just as conclusive and binding as judgments of courts of general jurisdiction, and are entitled to the same presumptions of verity.

5. ———: ———: **Claim for Damages: Not Filed Within Twenty Days: Lapse of Term: Jurisiction.** The statute requires the owner of property to be taken for a public road to file his claim for damages within twenty days after the last date of the publication of the notice; and if the publication is fully completed at one term, the court does not lose jurisdiction to establish the road at the next term. A proceeding pending and undisposed of at the termination of one term is continued by operation of law to the next regular term, and a claim for damages is not barred by action of the court, but by operation of law if not filed in time.

6. ———: ———: **Failure to File Claim: Effect of Non-Action: Limitations: Constitutional Statute.** The provision of the statute requiring that all owners of property sought to be taken for a public road shall be given notice and that the claims for damages of such of them as fail to file their claims within twenty days thereafter shall be forever barred, is not unconstitutional. Non-action, unless the claim is filed within the time prescribed, will bar his claim, and a statute so stating does not violate the constitutional provision that just compensation shall be ascertained "in such manner as may be prescribed by law."

7. ———: ———: **Due Process: Notice by Publication.** A proceeding in the county court to establish a public road is essentially one *in rem*, and service of notice by publication to all persons whose property may be taken or damaged is sufficient to satisfy the requirements of due process of law.

Appeal from Buchanan Circuit Court.—*Hon. Thomas B. Allen,* Judge.

AFFIRMED.

*Perry A. Brubaker* for appellant.

The question involved in this case is whether the orders of the county court and the record in this case justified the respondents to take 4.51 acres of land without compensation and without having a jury to assess the damages. We submit that under the Constitution the County of Buchanan cannot take appellant's land in the manner shown by the record in this case. (1) The taking of 4.51 acres of land of the value of three hundred dollars an acre, without any compensation at all, is not the just compensation required by Section 21, Article 2, Mo. Constitution. (2) The taking of 4.51 acres of appellant's land without a jury or board of commissioners of not less than three freeholders being appointed in the manner prescribed by law is contrary to Article 2, Section 21, of the Constitution. (3) So far as appellant was concerned the location of the public road on his land was the establishment of a public road. The law requires, under Sec. 10625, R. S. 1919, that applications for the establishment of all public roads, except state roads, shall be made by petition to the county court. No such petition was filed in this case and no notice as required by Sections 10626-7 was given. The whole proceeding is void so far as appellant is concerned. (4) Sec. 10636, R. S. 1919, does not authorize the taking of appellant's land with only the notice mentioned in said section when it is considered in connection with all the other sections in regard to public roads. (5) The provisions of the Constitution in regard to the taking of private property for public uses, that is, Sections 20 and 21 of Article 2, and Section 4 of Article 12, are self-enforcing. The Legislature cannot make any law contravening or overruling the provisions of the Constitution, and if the Legislature does make such a law, the same is void and of no force and effect. Sec. 10636, R. S. 1919, authorizes the county court to take private property without just compensation and without having a jury to ascertain what compensation is just. As the

county court followed said section, if it followed any law at all, the proceedings are void and of no force and effect in the taking of appellant's land. Grossman v. Patton, 186 Mo. 668; Shively v. Lankford, 174 Mo. 548; Householder v. Kansas City, 83 Mo. 494; Holmes v. Kansas City, 209 Mo. 528; Railroad v. Inv. Co., 205 Mo. 172; Hickman v. City, 120 Mo. 117; Jamison v. Springfield, 53 Mo. 224; Chicago Railroad Co. v. McGrew, 113 Mo. 390; Kansas City v. Smart, 128 Mo. 290; In re Essex Avenue, 121 Mo. 103. (6) The Constitution explicitly provides that until the compensation shall be paid to the owner or into the court for his use, the property shall not be disturbed or the proprietary rights of the owner herein divested. It is language so plain and unambiguous that there is no room for construction, and there can therefore be no divestiture of the owner's title or proprietary rights through the exercise of the power of eminent domain except and until actual payment be made of compensation previously ascertained in the manner required by law; until such payment is made the owner's rights remain unimpaired. Jasper Land & Imp. Co. v. Kansas City, 239 S. W. 866; Kansas City v. Ward, 134 Mo. 183; Buchanan v. Kansas City, 208 Mo. 682; State v. Hug, 44 Mo. 116; Peters v. Buckner, and State ex rel. Meadow Park Land Co. v. Buckner, 232 S. W. 1024; Kansas City v. Bacon, 147 Mo. 259; Walther v. Warner, 25 Mo. 277; Jefferson v. Wells, 263 Mo. 231; McElroy v. Kansas City, 21 Fed. 257; Wilson v. Berkstresser, 45 Mo. 283; Bennett v. Woody, 137 Mo. 377; Walker v. Likens, 24 Mo. 298; Adair Drainage Dist. v. Quincy & Oak, 280 Mo. 256; Greenwall v. Wells & Sons, 239 S. W. 582. (7) Section 30 of Article 2 of the Constitution provides that no person shall be deprived of life, liberty or property without due process of law. The act of the court in not allowing plaintiff damages for the taking of his property, deprives plaintiff of his property without due process of law. No law or procedure in court can deprive plaintiff of his property without compensation and due process of law, as the Con-

stitution provides that property shall not be taken for public uses without "just compensation," which shall be ascertained by a jury of freeholders. The judgment in this case is the taking of plaintiff's property without due process of law.

*Culver, Phillip & Voorhees* for respondents.

Appellant and all other property owners waived claims for damages, and the appointment of a jury to award damages was unnecesary. Reinert Bros. Co. v. Tootle, 200 Mo. App. 290; Abbott v. Board of Supervisors, 36 Iowa, 354; Shearer v. Commissioners, 13 Kan. 134; Cupp v. Seneca County Comrs., 19 Ohio St. 173; County of Sangamon v. Brown, 13 Ill. 212; Curry v. Town Trustees, 15 Ill. 321.

RAGLAND, J.—The County Court of Buchanan County in relocating a public road took for that purpose a strip of land fifty feet in width off of one side of plaintiff's farm. This action is to recover the value of the land taken and the consequential damages.

The county court in making the relocation followed, or attempted to follow, the provisions of Section 10636, Revised Statutes 1919. The section, so far as pertinent to the questions at issue, is as follows:

"The right of eminent domain is vested in the several counties of the State to condemn private property for public road purpose. . . . If the county court be of the opinion that a public necessity exists for the establishment of a public road, . . . it shall by an order of record so declare, and shall direct the county highway engineer within fifteen days thereafter to survey, mark out and describe said road . . . and to prepare a map thereof, showing the location, courses and distances, and the lands across or upon which said proposed public road will run, . . . and said highway engineer shall file said map and a report of his proceedings in the premises in the office of the county clerk.

Thereupon the county court shall cause to be published in some newspaper of general circulation in the county, once each week for three consecutive weeks, a notice giving the width, beginning, termination, courses and distances and sections and subdivisions of the land over which the proposed road is to be established, . . . and that said land . . . is sought to be taken for public use for road . . . purposes. If within twenty days after the last day of said publication no claim for damages for the taking of any such land or property be filed in the county clerk's office by the owner of said property . . . then the claim of any such owner shall be forever barred, and the county shall be authorized to enter upon and appropriate said lands or other property; and the county court shall make an order accordingly.''

In addition to the portion just quoted the section further provides a procedure for the ascertainment of the damages, when a claim therefor is filed and the county court and the owner are unable to agree upon the amount.

By a subsequent section the words ''established'' and ''establishing'' as used in the article relating to public roads are declared to embrace ''the locating, relocating, changing and widening of roads.''

On April 21, 1919, and during its regular February term, the County Court of Buchanan County, apparently of its own motion, found, and by an order duly entered of record declared its opinion to be, that a public necessity existed for the change and relocation of that portion of the public road known as the St. Joseph-Halls-Rushville-Winthrop Road which lies between the Banker Crossing and Rushville, and that a public necessity existed for the taking and condemning of private property and land for that purpose. On the same day and in connection with such finding and declaration, by order entered of record, the court directed the County Highway Engineer of Buchanan County ''to survey, mark out and describe the proposed change and relocated road leading from Banker Crossing to Rushville and to prepare a

map of the said proposed road showing the location, courses and distances and the lands across and upon and over which said proposed road shall run and to file said map and a report of his proceedings with the Clerk of the County Court within fifteen days hereafter.''

Pursuant to the order just mentioned the County Highway Engineer, on May 12, 1919, filed in the office of the county clerk a report of his proceedings thereunder, which complied with the order in all respects except as to the time within which it was filed. The report not only showed ''the location, courses and distances and the lands across and upon which said proposed road would run,'' but gave the names of the several owners of such lands and particularly described that part of the lands of each that would be required for the purposes of the road.

On June 30th, and during its regular May Term, 1919, the county court, as shown by its record, ordered:

''That public notice of the change and relocation of the public road known as the St. Joseph-Halls-Rushville-Winthrop read from what is known as Bankers Crossing to Rushville be published once each week for three consecutive weeks in the St. Joseph Gazette. The first publication to be on June 23, 1919.''

(It was admitted at the trial that the St. Joseph Gazette was a newspaper in general circulation in Buchanan County).

The next record entry with reference to the proposed road was as follows:

''August Term, Thursday, September 4, 1919.

''Comes now the county clerk and files the proof of publication of the change in the location of road of the St. Joseph, Halls, Rushville road.''

Neither the notice itself as published nor the proof of publication filed by the county clerk was offered in evidence, but the final judgment of the county court establishing the relocated road and condemning the lands over which it was to run recited:

''Whereas, the county court caused to be published

in the St. Joseph Gazette, a newspaper of general circulation in the County of Buchanan, once each week for three consecutive weeks, to-wit: On June 23, 1919; June 30, 1919, and July 7, 1919, a notice giving the width, beginning, termination, courses and distances and sections and subdivisions of the land over which the proposed changed and relocated road was to be established and that said land and property was sought to be taken for public use for road purposes, and

"Whereas, proof of publication of said notice was filed and entered of record in this court on the 4th day of September, 1919, and

"Whereas, the court doth here find that within twenty days after the last day of publication no claim for damages for the taking of any of the above described land and property was filed in the county clerk's office by the owners of said property or by the guardians or curators of insane persons or minors owning any of the land and property proposed to be taken by the changing and relocating of said road."

While plaintiff at the time was taking the St. Joseph Gazette he had no actual knowledge of the publication of the notice therein or of the pendency of the proceeding so far as it was intended to affect his land.

It was agreed that the land actually taken was of the value of $1353, and that as a result of the taking the remainder of plaintiff's farm was damaged in the sum of $315.

Upon a ruling by the trial court at the conclusion of all the evidence that a verdict should be directed for defendants, plaintiff took an involuntary nonsuit with leave, and judgment was entered accordingly. From that judgment he has appealed.

From numerous assignments of error the following may be deduced as the principal grounds upon which appellant relies for a reversal of the judgment: (1) Section 10636, standing alone, does not authorize a county court to establish a public road and condemn private property therefor; (2) the proceedings of the county

court were void because the provisions of said section were not literally followed; and (3) even if there had been a compliance with its provisions, the statute itself (Section 10636) is unconstitutional.

I. Under this head it is contended that the county court was without jurisdiction to make the findings and order of April 21, 1919, with respect to the relocation of the St. Joseph-Halls-Rushville-Winthrop Road because no application therefor had been filed and notice given in accordance with Sections 10625 and 10626, Revised Statutes 1919. A reading of the entire article (Art. I, chap. 98) makes it plain, however, that two separate schemes wholly independent of each other are provided for establishing and relocating public roads. Under the first (Secs. 10626-10630) the proceeding must be initiated by the petition of freeholders of the municipal township or townships through which the proposed road will run; under the second (Sec. 10636) the county court may in the first instance act of its own motion. By Section 10636 the power of eminent domain in connection with the establishment of public roads is vested directly in the several counties of the State to be exercised by them in their several capacities as quasi-municipal corporations and the county court is made the agent through which the power is to be exercised. Whenever the county court is of the opinion that a public necessity exists for the establishment of a public road, regardless of the source of its information or of the considerations that may move it thereto, it may by an order of record so declare and direct the county highway engineer to survey, mark out and describe the road, etc. No antecedent or preliminary steps are necessary to give it jurisdiction to take these proceedings. This section of the road law was plainly intended to invest the county court with the power to establish and open public roads whenever and wherever public necessity requires it, without waiting upon the tardy and uncertain action of individual land owners or communities.

*May Act Without Application.*

II. (1) The order of the county court to the county highway engineer, made April 21, 1919, directed the latter to survey, mark out and describe the proposed road and file a report of his proceedings under the order in the office of the county clerk within fifteen days thereafter. But the report was not filed until May 12th. And although the statute provides that upon the filing of the report of the county highway engineer the court shall "thereupon" cause notice of the proceeding to be published, the publication was not ordered until the 20th day of June. It is claimed that these alleged departures from the procedure prescribed by the statute deprived the county court of jurisdiction and its action thereafter was a nullity.

**Engineer's Report: Time of Filing.**

(2) It is of course established law in this State that where private property is sought to be taken for a public use, under statutory authority, all statutory requirements must be fully and strictly complied with. But in such case strict compliance with the statute does not necessarily mean a literal and exact compilance. In many respects a substantial compliance will suffice. [Nickerson v. Lynch, 135 Mo. 471; Darrow v. Railroad, 169 Ind. 99.] The proceeding under the statute now under consideration, up to the time the county highway engineer files in the office of the county clerk a report of what he has done pursuant to the preliminary order of the county court and the court orders publication of notice, is purely *ex parte;* no right of landowner or other has attached and no interest of either has been affected adversely or otherwise. It is inconceivable how any such right or interest could be prejudiced by a failure of either the engineer or the county court to comply literally with the statute with respect to the times when these preliminary acts are to be performed. From a reading of the section as a whole it is clear that its provisions, as to the time within which the highway engineer shall survey, mark out, and describe the proposed road and file a report of his proceedings in the

**Directory Statute.**

office of the county clerk and as to the time within which the county court shall order the publication of notice, are intended merely as directions for the orderly, prompt and expeditious conduct of the proceeding, and not as limitations of the power conferred upon the court. A substantial compliance with these provisions is therefore all that is required. And where, as in this case, the engineer's report was filed within 21 days and the court at the same term at which such filing was made ordered publication of notice, there was such a compliance.

(3) Appellant further insists that there was no proof of the publication of a notice complying with the statutory requirement in that particular. On the contrary the recitals of the final judgment of the county court relocating the road and condemning the land over which it was to run clearly established the fact that notice was given in exact conformity with the statute. It was not necessary that the original notice and the proof of its pubilcation filed by the county clerk should have been put in evidence. The county court is a court of record, and while its jurisdiction is limited, its orders and judgments, made while acting judicially and within its jurisdiction, are just as binding and conclusive as those of courts of general jurisdiction; and its records with respect to such orders and judgments are entitled to the same presumptions on verity. [Johnson v. Beazley, 65 Mo. 250; Brawford v. Wolfe, 103 Mo. 391; Rottmann v. Schmucker, 94 Mo. 139; See also Lingo v. Burford, 112 Mo. 149, 155.]

*Proof of Publication.*

(4) The last publication of the notice was on July 7, 1919, and the period of 20 days thereafter, the time prescribed by the statute within which the owners of the private property sought to be taken for the purposes of the road could file claims for damages, expired July 27, 1919. The court after ordering publication of the notice took no further action until September 6, 1919, during the August term, when it entered the final judgment heretofore referred to. Appellant contends that as the

*Jurisdiction: Termination of Term.*

time for filing claims for damages expired during the May term without any such claims having been filed and the court thereafter permitted the term to lapse without taking action of any kind, it lost jurisdiction to proceed further in the matter. The order of publication of notice, following the statute, was not returnable to any particular term; whether the May term had ended on July 27, 1919, does not appear. But in any event no action on the part of the county court, either at that time or afterwards, was required to bar claims for damages on the part of the owners of the lands sought to be taken who had not filed their claims. The statute itself operated to do that. And as the proceeding was pending and undisposed of when the May term ended it stood continued until the next regular term by operation of law. The contention is without merit.

III. It is next contended that the statute is unconstitutional because it authorizes the taking of private property for public use without just compensation. The power of eminent domain has been delegated to the Legislature in the general grant of legislative power, and this power it may freely exercise subject only to the express limitations of the Constitution. The limitation said to be contravened by the statute is the one providing for the ascertainment of just compensation by a jury or board of commissioners, "in such manner as may be prescribed by law," and the payment of such compensation before the property is disturbed or the owner's rights therein are divested. It will be noted that the language in which the limitation is couched itself gives recognition to the legislative discretion to prescribe the procedure by which just compensation is to be ascertained and its payment secured. But aside from such recognition the Legislature is clearly invested with authority to provide such methods and machinery for the exercise of the power of eminent domain as will in its opinion be most advantageous to the public and at the same time safeguard the

*Constitutoinal Statute.*

constitutional rights of the private owner, and if the procedure prescribed by it is reasonable and adequate for such purposes it cannot be held to be invalid.

The statute under which the proceeding in controversy was had provides for the assessment of the damages that may be sustained by the owner whose lands are sought to be taken, except where none are claimed, by a jury of six freeholders and the payment thereof before the appropriation of the lands to road purposes. It further provides that all owners whose property is sought to be taken shall be given notice thereof and that the claims for damages of such of them as fail to file a claim within twenty days thereafter shall be forever barred. It is this latter provision that is assailed. It is said that the owner of private property cannot be deprived of his property without just compensation by mere non-action, that it requires some positive affirmative act on his part to constitute a waiver of his constitutional right to such compensation. It must be conceded that ordinarily the owner will not be barred of his right to recover damages for the appropriation of his property to a public use by mere passive acquiescence therein within any period short of that fixed by the statute of limitations; this, because no positive duty rests upon him to take affirmative action. But under this statute such duty is imposed upon him. It requires the owner, upon being given due notice that his property is sought to be taken for a public use, to file within a specified time his claim for damages, under penalty of having his right thereto foreclosed. The statute in its entirety gives due recognition both to the right of the public to take private property for public use and to that of the owner to the payment of just compensation before such taking. It requires the former through the county court to initiate the proceeding for the ascertainment and payment of such compensation, and affords the latter ample opportunity to present his claim and be heard with respect thereto. These provisions in our opinion satisfy the constitutional require-

**Non-Action.**

ments with respect to the taking of private property for a public use.

IV. Appellant finally insists that the proceeding through which ,his land was appropriated operated to deprive him of his property without due process of law. He does not point out the specific ground upon which he bases his insistence, nor does it appear from the face of the record or otherwise that any fundamental principle of judicial procedure was violated. He was given due notice and full opportunity to be heard. It is true that the service of the notice was by publication, but the proceeding was one essentially *in rem* and in such cases, under all the authorities, that character of service is sufficient to satisfy the requirements of due process of law. [Kansas City v. Duncan, 135 Mo. 571; Kansas City v. Mastin, 169 Mo. 80, 89; Cupp v. Commissioners, 19 Ohio St. 173; Huling v. Railroad, 130 U. S. 559.]

*Due Process.*

In view of the conclusions reached with respect to the questions presented the judgment must be affirmed. It is so ordered. All concur.