CARL BARKER, Appellant, v. ST. LOUIS COUNTY.—104 S. W. (2d) 371.

Division One, April 21, 1937.

*Thompson, Mitchell, Thompson & Young, C. P. Berry* and *Calvin A. Brown* for appellant.

*George E. Heneghan* for respondent.

BRADLEY, C.—This cause is in ejectment to recover land (private property) taken by St. Louis County for a public road. The trial court sustained defendant's motion for judgment on the pleadings and plaintiff appealed. ■ It is contended that ejectment is not the proper remedy. Plaintiff's case is based solely on the theory that the proceedings resulting in taking his property without just compensation are utterly void. If so, ejectment is a proper remedy. [Tebbs et al. v. Platte County, 325 Mo. 304, 28 S. W. (2d) 656.]

The constitutionality of that part of Section 7840, Revised Statutes 1929 (Mo. Stat. Ann., sec. 7840, p. 6740), permitting private property to be taken for public use, without just compensation, by nonaction

(short of the general Statute of Limitations) of the owner, is the question.

The petition is conventional. The answer admits that plaintiff is the owner and entitled to the possession, subject to the rights acquired by defendant in certain proceedings in the county court, which proceedings are pleaded, and, in substance, are: That September 8, 1930, the County Court of St. Louis County, by order of record, declared that it was of the opinion that a public necessity existed for establishing a public road and for the taking of certain described property for road purposes, the land described in plaintiff's petition being a portion thereof. The answer then goes on to plead the facts, showing that the county court proceeded in compliance with what is now Section 7840, Revised Statutes 1929. The reply admitted that the county court proceeded in compliance with Section 7840, but alleged that said section in so far as it permitted the county (by nonaction of the owner) to take land for public use without just compensation, is invalid, because contrary to Sections 21 (on taking private property for public use) and 30 (due process) of Article 2, Constitution of Missouri; and contrary to the due process clause and the clause prohibiting any state from denying "to any person within its jurisdiction the equal protection of the laws," in the Fourteenth Amendment, Constitution of the United States.

Section 7840 is as follows: "The right of eminent domain is vested in the several counties of the state to condemn private property for public road purpose, including any land, earth, stone, timber, rock quarries or gravel pits necessary in establishing, building, grading, repairing or draining said roads, or in building any bridges, abutments or fills thereon. If the county court be of the opinion that a public necessity exists for the establishment of a public road, or for the taking of any land or property for the purposes herein mentioned, it shall by order of record so declare, and shall direct the county highway engineer within fifteen days thereafter to survey, mark out and describe said road, or the land or material to be taken, or both, and to prepare a map thereof, showing the location, courses and distances, and the lands across or upon which said proposed public road will run, or the area, dimensions, description and location of any other property to be taken for the purposes herein, or both, and said highway engineer shall file said map and a report of his proceedings in the premises in the office of the county clerk. Thereupon the county court shall cause to be published in some newspaper of general circulation in the county, once each week for three consecutive weeks, a notice giving the width, beginning, termination, courses and distances and sections and subdivisions of the land over which the proposed road is to be established, or the location, area, dimensions and descriptions of any other land or property to be taken, or both, and

that said land or property is sought to be taken for public use for road or bridge purposes. *If within twenty days after the last day of said publication no claim for damages for the taking of any of such land or property be filed in the county clerk's office by the owner of said property, or by the guardians or curators of insane persons or minors owning said property, then the claim of any such owner shall be forever barred, and the county shall be authorized to enter upon and appropriate said lands or other property; and the court shall make an order accordingly.* If any claim for damages be filed, the same shall be heard on the first day of any regular or adjourned term of the county court after the expiration of the twenty days last aforesaid. If the county court and the land or property owner be unable to agree on the amount of the damages, the county court shall make an order reciting such fact, and cause a copy of same to be delivered to the judge of the circuit court of that county, and a transcript of the record and the original files in said cause shall be transmitted by the county clerk to the circuit clerk of the county. Upon receipt of the copy of the order of the county court last aforesaid by the circuit judge, the circuit court, or the judge thereof in vacation, shall make an order setting the cause for hearing within fifteen days, and if the order fixing the date of said hearing be made by the judge in vacation, it shall forthwith be filed in the office of the circuit clerk. The court, or judge in vacation, shall cause to be empaneled a jury of six freeholders not interested in the matter or of kin to any member of the county court, or to any landowner in interest. Said jury shall view the land, or other property, proposed to be taken, and shall hear the evidence and determine the question of damages under the direction of the court or judge. Five of said jury concurring may return a verdict, and in case of a disagreement another jury may be empaneled. The public necessity for taking said property shall in nowise be inquired into by the circuit court, and the judgment of the circuit court, or judge thereof in vacation, in said cause shall not be reviewed on appeal or by writ of error." (Italics ours.)

The portion in italics is the part of said section that is in question. Plaintiff did not file any claim. Section 21 of Article 2, Constitution of Missouri, so far as pertinent here, reads: "That private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested."

On a conceded all fours case (Petet v. McClanahan, 297 Mo. 677, 249 S. W. 917), construing what is now Section 7840, this court

(Division One) specifically held contrary to plaintiff's contention here, except, in the Petet case, the court did not mention that part of the Fourteenth Amendment, Federal Constitution, relative to equal protection of the law. Plaintiff's counsel frankly concede that if the ruling in the Petet case is correct, then plaintiff has no case, and that the judgment entered should be affirmed. But it is vigorously and ably argued that the Petet case "is wrong."

In ruling the question in the Petet case the court said: "It is next contended that the statute is unconstitutional because it authorizes the taking of private property for public use without just compensation. The power of eminent domain has been delegated to the Legislature in the general grant of legislative power, and this power it may freely exercise subject only to the express limitations of the Constitution. The limitation said to be contravened by the statute is the one providing for the ascertainment of just compensation by a jury or board of commissioners, 'in such manner as may be prescribed by law,' and the payment of such compensation before the property is disturbed or the owner's rights therein are divested. It will be noted that the language in which the limitation is couched itself gives recognition to the legislative discretion to prescribe the procedure by which just compensation is to be ascertained and its payment secured. But, aside from such recognition, the Legislature is clearly invested with authority to provide such methods and machinery for the exercise of the power of eminent domain as will in its opinion be most advantageous to the public and at the same time safeguard the constitutional rights of the private owner, and, if the procedure prescribed by it is reasonable and adequate for such purposes, it cannot be held to be invalid.

The statute under which the proceeding in controversy was had provides for the assessment of the damages that may be sustained by the owner whose lands are sought to be taken, except where none are claimed, by a jury of six freeholders, and the payment thereof before the appropriation of the lands to road purposes. It further provides that all owners whose property is sought to be taken shall be given notice thereof, and that the claims for damages of such of them as fail to file a claim within 20 days thereafter shall be forever barred. It is this latter provision that is assailed. It is said that the owner of private property cannot be deprived of his property without just compensation by mere nonaction; that it required some positive affirmative act on his part to constitute a waiver of his constitutional right to such compensation. It must be conceded that ordinarily the owner will not be barred of his right to recover damages for the appropriation of his property to a public use by mere passive acquiescence therein within any period short of that fixed by the Statute of Limitations; this because no positive duty rests upon

996

him to take affirmative action. But under this statute such duty is imposed upon him. It requires the owner, upon being given due notice that his property is sought to be taken for a public use, to file within a specified time his claim for damages, under penalty of having his right thereto foreclosed. The statute in its entirety gives due recognition both to the right of the public to take private property for public use and to that of the owner to the payment of just compensation before such taking. It requires the former through the county court to initiate the proceeding for the ascertainment and payment of such compensation and affords the latter ample opportunity to present his claim and be heard with respect thereto. These provisions in our opinion satisfy the constitutional requirements with respect to the taking of private property for a public use.''

■ No authority was cited to support the conclusion reached that the provisions of what is now Section 7840 ''satisfy the constitutional requirements with respect to the taking of private property for public use.'' Section 21 of Article 2 of our Constitution is self-enforcing, but may be supplemented by statute or city charter which does ''not contravene the constitutional provision, but which provide means for carrying out'' such provision. [Tremayne v. City of St. Louis, 320 Mo. 120, 6 S. W. (2d) 935, l. c. 940, and cases there cited.]

■ In 2 Lewis, Eminent Domain (3 Ed.), section 966, it is stated: ''Where the Constitution either expressly, or as interpreted by the courts, requires compensation to be first made for property taken for public use, a law which casts the initiative upon the owner and requires him to prosecute his claim for compensation within a time limited or be barred, is invalid. Where under such a Constitution property is appropriated to public use without complying therewith, the owner's right to compensation is not barred, except by adverse possession for the prescriptive period.''

And in 2 Nichols, Eminent Domain (2 Ed.), section 344: ''The constitutionality of statutes limiting the time within which an owner of land taken by eminent domain must apply for compensation unless he is to lose the right to recover it altogether is a question that never arises in many of the states. In some jurisdictions it is held that the constitutional right to compensation cannot be made conditional upon the application of the owner, and in such states it cannot, a fortiori, be made conditional upon his application within a limited time. In other states the requirement that compensation shall be paid in advance of the taking puts the burden upon the condemning party to hunt out the owner, have his compensation determined and tender it to him. . . .''

Morgan v. Willman et al., 318 Mo. 151, 1 S. W. (2d) 193, was to foreclose a deed of trust and enjoin the city of St. Joseph and others from taking possession of the condemned land (land had been con-

demned (in 1924) for city hall site) and from removing the buildings thereon, until plaintiff's interest was determined and paid for. The Willmans were the owners of the land and prior to the condemnation proceedings, they gave a deed of trust thereon to defendant, Hager, trustee, to secure a note for $3500, dated June 27, 1921, due in five years and payable to Gardner. Deed of trust was duly recorded. Plaintiff Morgan became the owner of the $3500 note. The Willmans, the trustee Hager and the *cestui que*, Gardner, were made parties defendant to the condemnation proceedings and were personally served. Also, there was publication directed to the named defendants "and to all persons concerned," which publication was "duly published according to law," giving notice of hearing in the condemnation suit to the named defendants "and all other persons who are interested by reason of ownership or in other manner or who are entitled to participate in this proceeding." The hearing, according to the publication, was to be held January 7, 1924, at 9:30 A. M., in Division One, circuit court, Buchanan County, "at which time and place . . . any person interested in this proceeding may appear at the time and place above mentioned and have a right to be heard and may appear before said commissioners and be heard and may except to the report of the commissioners after same has been filed in the circuit court at any time within 10 days after the filing of the report of said commissioners." Plaintiff, holder of the $3500 note secured by the deed of trust, did not appear. The condemnation proceedings went to final judgment and as to the Willman lots or land, a value of $12,500 was placed thereon. The city of St. Joseph, through its officers, endeavored to get the Willmans to accept the $12,500, but they would not, and this amount was turned over by the city to the clerk of the circuit court, but not "paid into court" as there was no court order. Later, June 14, 1924, the Willmans accepted the $12,500 from the clerk of the circuit court and satisfied the condemnation judgment, so far as it concerned their land, but limited the satisfaction to "our interest" and paid plaintiff mortgagee nothing. Plaintiff's foreclosure suit was filed June 19, 1924, and went to judgment October 21, 1924. The judgment was that as to the city of St. Joseph, contractors, etc., the petition was dismissed, but plaintiff was given a judgment against the Willmans for the $3500 note and interest, and for attorney's fee as provided in the note. Plaintiff appealed.

The contention of plaintiff was that her property had been taken for public use without just compensation. The particular statutes involved in the condemnation case did "not require the named defendants, or other parties interested, in the condemnation suit to file a claim or claims for compensation; neither does the statute deny compensation to any interested party who fails to appear in the con-

demnation proceeding or who fails to file a claim for compensation therein." In such respect the situation in the Morgan case was different to the situation here. On appeal in the Morgan case, judgment was reversed and cause remanded with directions to reinstate the petition and enter judgment for plaintiff as asked in her petition. In the course of the opinion (318 Mo. 151, 1 S. W. (2d) l. c. 198) the court said: "Conceding, for the sake of argument, that plaintiff was legally made a party to the condemnation proceeding by reason of the general order of publication therein, nevertheless her right to compensation, guaranteed by Section 21, Article 2 of our State Constitution, is wholly unaffected by her failure to appear in the condemnation proceeding or file a claim for compensation therein, provided, of course, that her property be taken or damaged for public use in such proceeding."

The Constitution of Illinois, Nebraska and Washington and many other states, on taking or damaging private property for public use, is similar to ours. In Moore v. Gar Creek Drainage Dist. et al., 266 Ill. 399, 107 N. E. 642, where it was contended that it was necessary for the landowner to make some timely affirmative move or else be barred, the court said: "Section 13 of Article 2 of the Constitution provides that private property shall not be taken or damaged for public use without just compensation. This is a guaranty that no citizen shall be thus deprived of his property until compensation for the same has not only been fixed but paid to him. Under this section of the Constitution it is not necessary for the property owner to take the initiative or to make any affirmative move towards the condemnation of his own property or the securing of compensation for the same."

Kime v. Cass County, 71 Neb. 677, 101 N. W. 2, 8 Ann. Cas. 853, was "for the purpose of ousting" the county from possession of a strip of land. The defense was that the land was a part of a highway "regularly established." On the question of the landowner being barred because of "failure to demand compensation before or at the time of taking," the court said: "If the Legislature could rightly require of the landowner one affirmative and initiatory act as a condition precedent to obtaining damages, they might require of him any other, or a series of acts which might be difficult or onerous, or, in some circumstances, impossible of performance, and so the constitutional guaranty might thus be seriously impaired or wholly frittered away. We are of opinion that the spirit, if not the letter, of the Constitution requires that the public seeking to appropriate private property to its use should, unless damages have been waived by some affirmative and unequivocal act, take steps of its own motion to ascertain their amount and secure their payment, and that mere passive acquiescence by an individual in the appropriation of

property, unaccompanied by any conduct indicative of affirmative assent thereto, should not, unless, continued for the statutory period of limitations, be regarded as a waiver of his rights." There are cases to the contrary cited in the note to the Kime case in 8 Ann. Cas., l. c. 855.

In Askam v. King County, 9 Wash. 1, 36 Pac. 1097, the court used this language: "To give effect to a law of this kind would be to substantially overthrow the provision of our Constitution, which provides, in Section 16 of Article 1, that no private property shall be taken or damaged without just compensation having been first made or paid into court for the owner. It is true that, if the owner comes into court and files his claim for damages, the law provides machinery for having it ascertained and paid; but if, for any reason he does not so appear and file his claim, the property is to be taken without this provision of the Constitution having been in any manner complied with." The same language was repeated in Kincaid v. City of Seattle, 74 Wash. 617, 134 Pac. 504.

If a constitutional provision is self-enforcing (as is Section 21 of Article 2 of our Constitution) then any legislation respecting the provision must facilitate enforcement and not curtail or limit any right created and conferred by the provision. If a legislative act undertakes to limit the provisions of the Constitution, then in a contest, the Constitution survives and the act falls. [Tremayne v. St. Louis, 320 Mo. 120, 6 S. W. (2d) 935, l. c. 940; State ex rel. Elsas v. Mo. Workmen's Compensation Comm. et al., 318 Mo. 1004, 2 S. W. (2d) 796, l. c. 799.]

There is no wealth of authority on the question we have in hand, viewing it as affected by constitutional provisions on taking private property for public use. The Petet case is the only one in this State perfectly in point, but we cannot agree to what is there ruled and the reasons therefor as to the validity of that part of Section 7840, Revised Statutes 1929, here challenged. It seems that the construction in the Petet case gave entirely too much scope to the language "in such manner as may be prescribed by law," appearing in Section 21, Article 2 of our Constitution. The Constitution says "that private property *shall not* be taken . . . for public use without just *compensation;*" that "such *compensation shall be ascertained* by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law." (Italics ours.) By whom is the compensation to be *ascertained*? By a jury or board, etc. How shall the jury or board proceed to *ascertain* the compensation? "In such manner as may be prescribed by law." But Section 7840 goes beyond the Constitution and provides that the compensation will *not* be ascertained, if the landowner "within twenty days after the last day of said publication" fails to file a "claim for damages." We think the situation presents a clear conflict between the

Constitution and the statute, and in such situation the Constitution, of course, survives and the statute, in so far as it conflicts, falls. But our constitutional provision, on taking private property for public use, does not end by providing just compensation for such property, and that the compensation *shall* be ascertained, etc. The provision goes on to provide that *"until* the same (the compensation) *shall be paid* to the owner, or into court for the owner, the property shall not be disturbed." (Italics ours.) Can it be said in reason that a condemnation statutory provision which *requires* a landowner to file his claim for damages, as here, or be forever barred, squares with any part of Section 21 of Article 2 of the Constitution? We think not. The Constitution clearly requires that the just compensation be both *ascertained* and *paid*, and all this *before* the property is taken. What we say here has no effect on cases where a landowner, by some affirmative action, waives his right to compensation or is barred by the general Statute of Limitation.

In view of the very clear and mandatory directions of our Constitution on taking private property for public use, we do not think that the twenty days' provision in Section 7840, Revised Statutes 1929, can be said to be a Statute of Limitations in such sense as to bar a landowner who fails to file a claim within the time prescribed. ■ It is true that one may waive some constitutional rights, example, right of trial by a jury in civil cases. [Hecker v. Bleish et al., 327 Mo. 377, 37 S. W. (2d) l. c. 447, and cases there cited.] Section 28, Article 2, Constitution of Missouri, among other things, provides that "the right of trial by jury, as heretofore enjoyed, shall remain inviolate," but where it has been held that a litigant has waived the right of trial by jury in civil cases, it appears, in most instances, that such litigant proceeded to trial, participated therein, etc., without demanding a jury. In other words, by *affirmative* action, waived the constitutional right of trial by a jury.

■ "There is no better settled law in our State than the rule that courts will not hold a statute to be unconstitutional unless it contravenes the organic law in such a manner as to leave no doubt of its unconstitutionality." [Bledsoe v. Stallard, 250 Mo. 154, l. c. 165, 157 S. W. 77.] On the other hand, if there is no doubt that a statute or part thereof is in conflict with the Constitution, then it is the duty of any court, whose duty it is to decide, to declare the conflict and declare void the statute or part thereof in conflict with the Constitution. [State ex rel. Blades v. Wabash Railroad Co., 251 Mo. 134, 158 S. W. 26.] Under the situation here, we are impelled to declare void that part of Section 7840, Revised Statutes 1929, above italicized, and the ruling in Petet v. McClanahan, 297 Mo. 677, 249 S. W. 917, in conflict with our ruling here, is overruled. We base our conclusion on Section 21 of Article 2 of our Constitution.

The invalidity "of a part of a statute does not render the remainder of the statute invalid where enough remains, after discarding the invalid part, to show the legislative intent and to furnish sufficient means to effectuate that intent. [State ex rel. McDonald v. Lollis, 326 Mo. 644, 33 S. W. (2d) 98, l. c. 100, and cases there cited.] We think Section 7840 may be workable, after eliminating the portion of the statute we hold invalid, when taken in connection with the self-enforcing provisions of Section 21, Article 2 of the Constitution.

It is not necessary to consider the subjects of due process and equal protection of the law, both of which are discussed at length in plaintiff's brief.

In view of our decision overruling the Petet case, this question arises: Should the *effect* of the present decision be retroactive or prospective only? Our rule is that if the overruled decision is one dealing with a rule of procedure, that is, procedural or adjective law, then the effect of the subsequent overruling decision is *prospective only;* but if the overruled decision is one dealing with substantive law, then the effect of the subsequent overruling decision is retroactive. [Koebel v. Tieman Coal & Material Co., 337 Mo. 561, 85 S. W. (2d) 519, l. c. 524; Eberle v. Koplar (Mo. App.), 85 S. W. (2d) 919, l. c. 923; State ex rel. May Department Stores Co. et al., v. Haid et al., 327 Mo. 567, 38 S. W. (2d) 44, l. c. 53; State ex rel. Midwest Pipe & Supply Co. v. Haid et al., 330 Mo. 1093, 52 S. W. (2d) 183; State ex rel. Blackmer & Post Pipe Co. et al. v. Rosskopf, 331 Mo. 793, 55 S. W. (2d) 287; Lober v. Kansas City (Mo.), 74 S. W. (2d) 815; Klocke v. Klocke, 276 Mo. 572, l. c. 582, 208 S. W. 825; Mountain Grove Bank v. Douglass County, 146 Mo. 42, l. c. 52, 47 S. W. 944.]

Adjective or procedural law is a "method provided by law for aiding and protecting defined legal rights, procedure; the law which prescribes the method of enforcing rights or obtaining redress for their invasion." [1 C. J., p. 1197.] "Substantive law is that part of the law which creates, defines and regulates rights, as opposed to adjective or remedial law, which prescribes the method of enforcing rights or obtaining redress for their invasion." [36 C. J., p. 963; Maurizi v. Western Coal & Mining Co., 321 Mo. 378, 11 S. W. (2d) 268, l. c. 272.] The distinction between substantive law and procedural law is that "substantive law relates to rights and duties which give rise to a cause of action," while procedural law "is machinery for carrying on the suit." [Jones v. Erie Railroad Co. (Ohio), 140 N. E. 366.]

In Douglass v. County of Pike, 101 U. S. 677, plaintiff brought suit in the Federal Court, Eastern District of Missouri, to recover from Pike County on overdue coupons detached from bonds issued

by the county. Judgment was rendered in favor of the county on its demurrer to plaintiff's petition. The bonds were issued pursuant to an act of the Legislature, authorizing townships to vote such bonds in order to facilitate the construction of railroads. The act went into effect in 1868, and in 1869, in State ex rel. North Mo. Cent. Railroad Co. v. The Linn County Court, 44 Mo. 504, the act was held, at least in effect, to be basically constitutional, although the court in a subsequent opinion (State ex rel. Woodson v. Brassfield, 67 Mo. 331, l. c. 342) pointed out that it did not (in the Linn County case) consider the constitutionality of the Act of 1868, "with respect to the number of votes it (the act) required to authorize" the issue of bonds.

The Pike County bonds were issued January 1, 1872. At the April Term, 1878, in two cases (State ex. rel. Woodson v. Brassfield, supra, and Webb v. Lafayette County, 67 Mo. 353), the Act of 1868, authorizing the issue of such bonds was held unconstitutional. Notwithstanding the ruling in these last-mentioned cases by this court, the Supreme Court of the United States in Douglass v. County of Pike, supra, held that plaintiff could recover. The court said: "The true rule is to give a change of judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights that would be given to a legislative amendment; that is to say, make it prospective, but not retroactive. After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision is to all intents and purposes the same in its effects on contracts as an amendment of the law by means of a legislative enactment. So far as this case is concerned, we have no hesitation in saying that the rights of the parties are to be determined according to the law as it was judicially construed to be when the bonds in question were put on the market as commercial paper."

In Klocke v. Klocke, 276 Mo. 572, 208 S. W. 825, cited supra, it appears that Henry Klocke, in October, 1913, died childless and intestate. At the time of his death he was seized of a vested remainder in fee (subject to a life estate of his mother) of certain land devised to him under the will of his father. The mother died in March, 1914. Shortly after the death of the mother, the widow of Henry Klocke brought suit to partition the land which she claimed belonged to her husband at the time of his death, and alleged that she was entitled to one-half interest therein. The defendants, sisters of Henry Klocke, and devisees under the same will, alleged that Henry Klocke was never in possession of the land, because of the intervening life estate of the mother, and for that reason, plaintiff was not entitled to dower, and not being entitled to dower, she was not entitled to *elect* to take a

one-half interest in lieu of dower. The trial court sustained the theory of defendants, and held that the widow of Henry Klocke "had no right, title, interest, share or estate" in the land in question. The theory of defendants had been announced as the law in Von Arb v. Thomas, 163 Mo. 33, 63 S. W. 94. On appeal, the judgment of the trial court in the Klocke case was reversed and the construction as given in the Von Arb case was held untenable and the decision in that case was overruled. It was held, however, that the effect of the ruling in Klocke v. Klocke would be prospective only.

That part of Section 7840, Revised Statutes 1929, vesting in the several counties the right of eminent domain "to condemn private property for public road purpose" is a substantive right, but the portion thereof which we have held to be void is a part of the procedure prescribed by said section for enforcing such substantive right. The present situation differs from any of the cases we have cited or found from this State on the point, in that, in the case here, we are not overruling an untenable construction of a wholly valid statute, but we are overruling a decision sustaining the constitutional validity of a part of the procedural portion of a statute, which procedural portion, we rule, is, in part, void, because unconstitutional. However, we cannot close our eyes to the probable consequence, should our ruling here be retroactive. In the Koebel case, supra, it is ruled (337 Mo. 561, 85 S. W. (2d) l. c. 524) that "courts of final decision may define and declare the effect of a decision overruling a former decision, that is, whether or not it shall operate prospectively only," citing Great Northern Ry. Co. v. Sunburst Oil & Refining Co., 287 U. S. 358, 53 Sup. Ct. 145, 77 L. Ed. 360, 85 A. L. R. 254. In the last-mentioned case it is stated: "A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions. Indeed, there are cases intimating, too broadly (cf. Tidal Oil Co. v. Flanagan, 263 U. S. 444, 68 L. Ed. 382, 44 Sup. Ct. 197), that it *must* give them that effect; but never has doubt been expressed that it *may* so treat them if it pleases, whenever injustice or hardship will thereby be averted."

We hold that the effect of the present decision, holding Section 7840, Revised Statutes 1929, void in part, and overruling the Petet case, in so far as it conflicts with our ruling here, shall be prospective only and not retroactive, except as to plaintiff. He has borne the burden of bringing about a result which will, in the future, give assurance to the property owner that his property cannot be taken for public use except by compliance with Section 21, Article 2 of the Constitution, or by adverse possession for the prescriptive period.

1004

The judgment should be reversed and the cause remanded, and it is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.