SOUTHWESTERN BELL TELEPHONE COMPANY, et al., Plaintiffs-Appellants,

v.

Gene WICKLIFFE, Greene County Collector, Defendant-Respondent,

Springfield R–12 School District, Intervenor-Respondent.

No. 12242.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 6, 1982.

Motion for Rehearing Overruled and to Transfer to Supreme Court Denied Jan. 22, 1982.

Application to Transfer Denied Feb. 16, 1982.

Richard E. Dorr, Springfield, for all plaintiffs-appellants.

John Kelly, James E. Taylor, Kansas City, Jack C. Lorenz, St. Louis, for plaintiff-appellant Southwestern Bell Telephone Co.

Donald Ransom, St. Louis, for plaintiffs-appellants, St. Louis-San Francisco Railway Co., Clarkland, Inc., 906 Olive Corp. and Frisco Transportation Co.

R. Max Humphreys, Miller, Humphreys & Seidel, Trenton, for intervenor-respondent, Springfield R–12 School Dist.

PREWITT, Presiding Judge.

The unusual proceedings in this case require that we give a recitation of its history. On March 23, 1979, this suit was initiated, seeking recovery of a portion of taxes assessed against plaintiffs' property by the Greene County Collector. The trial court entered judgment denying plaintiffs' claims on January 6, 1981, and on February 13, 1981, they appealed to the Supreme Court of Missouri. On April 10, 1981, the supreme court transferred the case to this district. We heard argument on September 17, 1981, and on October 5, 1981, handed down the following opinion:

Plaintiffs paid under protest and seek to recover a portion of the 1978 and 1979 taxes assessed by the Greene County Collector on their real and personal property. They contend that an additional school tax levy of $ .48 on the $100 assessed valuation, authorized by the voters at an election on September 28, 1976, was valid only for the years 1976 and 1977 and should not be collected in 1978 and 1979. The ballot presented to the voters provided, in part, that the school district of Springfield "be authorized to levy, for a period of two years, a tax of $ .48 on the hundred dollars assessed valuation in excess of the amount authorized by the Constitution without voter approval and the amount approved by the voters at the last school election". At trial intervenor contended, and the trial judge agreed, that Mo.Const. art. X, § 11(c) authorized continuing the $ .48 rate beyond 1977 as it was the last rate approved by the voters. Plaintiffs' claims were denied.

Plaintiffs appealed to the supreme court which transferred the case to this district of the Missouri Court of Appeals "in which jurisdiction is vested". Such a transfer is not an adjudication that we have jurisdiction nor does it preclude this court from examining that issue and re-transferring to the supreme court. *Collector of Revenue for the City of St. Louis v. Parcels of Land Encumbered With Delinquent Tax Liens*, 566 S.W.2d 475, 476 (Mo. banc 1978). Because of § 139.290, RSMo 1978, intervenor "believes" that jurisdiction is in the supreme court. That section provides "that before any levy shall be considered illegal, it shall have been so declared by the supreme court of the state of Missouri". Mo.Const. art. V, § 3, gives the supreme court "exclusive appellate jurisdiction in all cases involving the validity of a treaty or statute of the United States, or of a statute or provision of the constitution of this state, the construction of the revenue laws of the state, the title to any state office and in all cases where the punishment imposed is death or imprisonment for life." Under that section the consti-

tution gives the court of appeals appellate jurisdiction in matters not included in the supreme court's exclusive jurisdiction. The constitution is controlling and nothing contained there would grant the supreme court jurisdiction in all cases involving tax levies. Thus, we do not think that § 139.290 can require the supreme court to determine a matter if under the constitution it does not have jurisdiction. If the construction of revenue laws was before us, we would not have jurisdiction, but in this case we perceive that it is our function to apply the revenue laws, not to construe them. See *State ex rel. Crawford County R–11 School District v. Bouse*, 586 S.W.2d 61, 63 (Mo.App.1979).

The basis of the trial court's ruling against plaintiffs was rejected in *Ederer v. Dalton*, 618 S.W.2d 644, 646 (Mo. banc 1981). The court in *Ederer* concluded that an indefinite continuation of a tax rate approved by the voters for a limited period of time would defeat the expectations of the voters and "would in effect be a fraud on those voters who were in favor of the increase". The court held that the 1970 amendment to Mo.Const. art. X, § 11(c) "must therefore be read to permit an increase to continue indefinitely only when no time limit has been placed on its duration."

Intervenor contends that *Ederer* is not controlling here because: (1) intervenor did not attempt to have an election to retain the increase after the two year period expired as did the school district involved in *Ederer* and (2) "most importantly, this is not a declaratory judgment action to declare the effect of the two year limitation which was used in the ballot. This is a protest filed by corporate taxpayers" and "these taxpayers, who are not voters, do not have standing to challenge the levy on the basis of a ballot which could have misled or defrauded them." Intervenor claims that pursuant to § 139.031.3, RSMo 1978, courts, in tax refund cases, should "make such orders as may be just and equitable". It contends that to be just and fair we should deny plaintiffs' claim because

"the ballot is being challenged by nonvoters and that at the time the ballot was drawn, the state of the law was unsettled and uncertain." We are also asked to consider that no voters have challenged the levy.

We believe intervenor's present contentions are without merit. If the increase expired, we do not see how it was revived by the school district making no attempt to retain it by election. The reason why the tax rate is invalid should not prevent plaintiffs' recovery. We do not see why refunds should be paid only to people who voted and were possibly misled by the ballot. To do so would indicate that only those who voted for the levy and were misled could receive a refund if properly requested. Nor do we see why the failure of others to protest their tax payments and claim refunds should prejudice these plaintiffs.

Section 139.031.3 would not give us authority to prohibit plaintiffs' recovery if they otherwise would be entitled to it. That section requires that "the court shall make such orders as may be just and equitable to refund to the taxpayer all or any part of the taxes paid under protest". It would not be just and equitable to deny plaintiffs the recovery of taxes improperly assessed and paid under protest.

The judgment is reversed and the cause remanded for entry of a judgment in favor of plaintiffs for recovery of the taxes in dispute, in the amounts stipulated.

Thereafter, we denied intervenor's motion for rehearing or in the alternative to transfer to the supreme court. Intervenor then requested the supreme court to transfer the case there because it "involves construction of the revenue laws". On December 14, 1981, the supreme court entered the following order:

"Now at this day, it is ordered by the Court here that Intervenor-Respondent's application to transfer from the Missouri Court of Appeals, Southern District No. 12242, is hereby sustained. The holding of this Court in *Ederer v. Dalton*, 618

S.W.2d 644 (Mo. banc 1981), is deemed by the Court to be prospective only in its application, following the date of its publication, September 1, 1981. Cause retransferred to the Missouri Court of Appeals, Southern District, with directions to modify its opinion accordingly."

Neither in its brief, filed after the decision in *Ederer*, nor in oral argument did intervenor contend in this court that the holding in *Ederer* should be applied only prospectively. In its brief intervenor said that *Ederer* "on its face would appear to be dispositive of this case but there are major differences in the fact situation." Thereafter were set forth the attempts to distinguish *Ederer* discussed in our previous opinion. Nevertheless, we researched whether *Ederer* should be applied prospectively only. After due consideration we determined that it should be applied here. In order to conserve time and space we limited our opinion to the legal questions raised by the parties.

█ Knowing now that *Ederer* is to only have effect prospectively and apparently is not to be considered here, we must apply Art. X, § 11(c) to a situation not previously presented to the appellate courts of Missouri. As the matter has twice been transferred here notwithstanding a contention that

this case involves construction of the revenue law, the latter time after all the issues had been developed, see *Collector of Revenue v. Parcels of Land*, 566 S.W.2d 475, 476 (Mo. banc 1978), the supreme court must feel that we have jurisdiction. In compliance with their order, we hereafter consider this matter as if *Ederer* has no application to it.

Intervenor contends that the provision in Mo.Const.Art. X, § 11(c), which states that a school board can continue the last tax rate approved, authorizes continuing such a rate even if it was presented to the voters with a time limitation.[1] A literal reading of that portion of the section would seem to favor intervenor. We agree with intervenor's brief that the court in *Fisher v. Reorganized School District No. R–V of Grundy County*, 567 S.W.2d 647 (Mo. banc 1978), and *Street v. Maries County R–I School District of Maries County*, 511 S.W.2d 814 (Mo.1974), recognized inconsistencies in Mo. Const.Art. X, § 11(c), "but did not rule upon them." There is language in *Fisher*, 567 S.W.2d at 649 that could be considered favorable to intervenor's position, but as the facts and issues there differ from this matter we do not consider that language controlling here.

1. Following its amendment in 1970 Mo.Const. Art. X § 11(c) now reads:

In all municipalities, counties and school districts the rates of taxation as herein limited may be increased for their respective purposes for not to exceed four years, when the rate and purpose of the increase are submitted to a vote and two-thirds of the qualified electors voting thereon shall vote therefor; provided in school districts the rate of taxation as herein limited may be increased for school purposes so that the total levy shall not exceed three times the limit herein specified and not to exceed one year, except as herein provided, when the rate period of levy and the purpose of the increase are submitted to a vote and a majority of the qualified electors voting thereon shall vote therefor; provided in school districts in cities of seventy-five thousand inhabitants or over the rate of taxation as herein limited may be increased for school purposes so that the total levy shall not exceed three times the limit herein specified and not to exceed two years, except as herein provided, when the rate period of levy and the purpose of the increase are submitted to a vote and a majority of the quali-

fied electors voting thereon shall vote therefor; provided, that in any school district where the board of education is not proposing a higher tax rate for school purposes, the last tax rate approved shall continue and the tax rate need not be submitted to the voters; provided, that in school districts where the qualified voters have voted against a proposed higher tax rate for school purposes, then the rate shall remain at the rate approved in the last previous school election except that the board of education shall be free to resubmit any higher tax rate at any time; provided that any board of education may levy a lower tax rate than approved by the voters as authorized by any provision of this section; and provided, that the rates herein fixed, and the amounts by which they may be increased may be further limited by law; and provided further, that any county or other political subdivision, when authorized by law and within the limits fixed by law, may levy a rate of taxation on all property subject to its taxing powers in excess of the rates herein limited, for library, hospital, public health, recreation grounds and museum purposes.

The resolution of intervenor's board calling the election stated that the reason for it was the "need of additional funds for the Incidental Fund to sustain the schools of the District for the years 1976 and 1977". The proposition contained in the notice of election and the ballot asked the voters to decide if the school board shall "be authorized to levy, for a period of two years, a tax of $ .48 on the hundred dollars assessed valuation." It was stipulated by the parties that:

> "At no time did defendant, intervenor or anyone acting on their behalf ever publicly state, explain, announce or otherwise publicize prior to September 28, 1976, that the increased school tax operating levy of $3.75 per $100 assessed valuation would be effective beyond the two year period stated in the ballot utilized at said special election."

As discussed in our previous opinion, we do not agree with intervenor's argument that because no voters have challenged the levy a non-voting taxpayer cannot question it. We do not know whether some or all of the voters would agree to extending the levy or if they were unaware that the levy was extended beyond two years or whether they chose because of their regard for the school system, or because of economics, not to protest. These are facts that might be considered before a decision is made to seek legal relief even after it is determined that a voter might be entitled to it. That no voters protested, regardless of the reason, should not change the outcome here. The voters by not exercising their legal rights could not make the actions of certain taxpayers invalid nor make valid unauthorized actions by taxing authorities.

 A reasonable application of Art. X, § 11(c) requires that the tax rate should not be extended beyond the time represented to the public. Extremely clear language in the Missouri Constitution would be required before we would say that a provision in it would allow the voters to be misled by the language in the documents preliminary to election, the notice of election, and the ballot. For intervenor's position to be upheld, we would have to find that the constitution sanctioned the presentation of misleading information to voters. We do not think that in adopting this provision of the constitution the people of Missouri intended that result or conceived that such might occur. The authorization under Art. X, § 11(c), to continue the last approved tax rate can only reasonably mean the last tax rate approved without any time limitation.

No statements contained here should be interpreted as an indication that there was any bad faith on the part of the school district, its board or attorneys. There were arguable positions for both sides and we understand how the board might believe, based on this provision, that they could continue the tax rate in question. It is understandable that they took a position which they believed was best for the school system and we are satisfied that they did so in good faith with an honest belief that they were correct.

The judgment is reversed and the cause remanded for the entry of a judgment in favor of plaintiffs for recovery of the taxes in dispute, in the amount stipulated, together with the interest, if any, which the funds have earned if they were deposited in an interest-bearing account.

BILLINGS, J., concurs.

HOGAN, J., files concurring opinion.

HOGAN, Judge, concurring.

Although I agree the correct result has been reached in the principal opinion, I have arrived at that conclusion by a route somewhat different from the majority. Almost certain that I shall sound officious, I wish to state my reasons separately.

I have no difficulty finding jurisdiction of the appeal in this court. In this case, as in *Ederer v. Dalton*, 618 S.W.2d 644 (Mo. banc 1981), and *Street v. Maries County R–1 Sch. Dist. of Maries County*, 511 S.W.2d 814 (Mo. 1974), the controversy was focused upon the necessity and manner of submitting a school district tax levy to a popular vote. In both *Ederer* and *Street* our Supreme Court found the provisions of Mo.Const.

Art. X, § 11(c), rather than the statutes, to be controlling. Here the applicable statute, § 164.031, RSMo 1969 (Supp.1975), did not *require* the "rate period of levy" to be submitted. Nevertheless, the ballot submitted the challenged levy for a period of 2 years. Under the ruling in *Ederer, supra,* 618 S.W.2d at 646[3, 4], continuation of the tax rate approved on September 28, 1976, for more than 2 years infringes the plaintiffs' constitutional rights.

Of course, the constitution is a "law" and certainly Art. X, § 11(c) deals with "revenue," but the appellate jurisdictional aspect of the case becomes clear when we recall that if an interpretation of the constitution is required, but the question presented has already been settled by prior decisions of our Supreme Court, this court has jurisdiction. *State ex rel. Doniphan Telephone Company v. Public Service Commission,* 369 S.W.2d 572, 575–576[5] (Mo.1963); *Swift & Company v. Doe,* 311 S.W.2d 15, 21 (Mo. 1958); 1964 Wash.U.L.Q., p. 491 and cases cited n. 156. In my view, the principle just stated is the very essence of the "construction-application" doctrine, see *Dickey v. Holmes,* 208 Mo. 664, 106 S.W. 511 (1907), and our duty is to "apply" the constitution as it has been interpreted by the Supreme Court.

Forward or "prospective" application of judicial precedent is not a novel subject; [1] as a matter of federal constitutional law, "A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward....", *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360, 366 (1932), and our Supreme Court has recognized its inherent power to apply a decision prospectively for at least 63 years. *Klocke v. Klocke,* 276 Mo. 572, 208 S.W. 825 (banc 1919).

What we are bound to do here, as I conceive our duty, is to apply the settled constitutional law as the Supreme Court

has applied it in similar situations. Cf. *Smith v. St. Louis Public Service Co.,* 364 Mo. 104, 107–110, 259 S.W.2d 692, 694[1, 2] (banc 1953). We are not without precedent to follow. *Ederer* was a decision construing the provisions of Art. X, § 11(c). In *Klocke, supra,* 276 Mo. at 581–582, 208 S.W. at 827, the court suggested that a decision effecting a new construction of a statute or constitutional provision differs from a decision overruling prior precedents and should usually be made prospective. Nevertheless, the court applied its reinterpretation of the statute to the case before it. In *Barker v. St. Louis County,* 340 Mo. 986, 104 S.W.2d 371 (1937), although it is a divisional opinion, the court held that a statute closely limiting the time within which an owner of land might apply for compensation for land taken by eminent domain was in conflict with the mandatory and self-enforcing provisions of Art. II, § 21 of the Constitution of 1875, but stated it could not "close [its] eyes to the probable consequence, should [its] ruling here be retroactive." The court therefore held that its ruling would be prospective only and not retroactive, *"except as to [the] plaintiff."* (Our emphasis.) *Barker v. St. Louis County, supra,* 340 Mo. at 1003, 104 S.W.2d at 379[13].

In my opinion, the controlling precedent is *Barnes Hospital v. Leggett,* 589 S.W.2d 241 (Mo. banc 1979). There our Supreme Court reinterpreted Art. X, § 6 of the Constitution of 1945 and § 137.100, RSMo 1978, to authorize a partial exemption of a building or tract where the building or tract is used in part for charitable purposes and in non-charitable purposes, and held, 589 S.W.2d at 244, "... that the new rule shall apply *to this case* and to all assessments which commence on the first day of [the next calendar year] and thereafter." (Our emphasis.) It is not for this court to explore the rationale of this decision; we have only to apply it.

The only matter before this court is the school tax levy authorized at the election

1. See Annot., Prospective or Retroactive Operation of Overruling Decision, 10 A.L.R.3d 1371 (1966).

held on September 28, 1976. I would hold that *Ederer* applies to this case and all assessments after January 1, 1982. Further, I would order that plaintiffs have and recover the taxes in dispute, in the amount stipulated, together with the interest, if any, which has accrued during the time the taxes collected were deposited in an interest-bearing account.

