KANSAS CITY v. DUNCAN et al., *Appellants.*

Division One, November 11, 1896.

1. **Municipal Corporation**: STREET GRADING: JURISDICTION: CONSTRUCTIVE SERVICE: STATUTE. Where, in proceedings to grade a street, jurisdiction has been acquired by publication, under Kansas City charter, article 8, section 5, such jurisdiction will not be disturbed by the non exercise of the further privilege given the court by such section to direct a personal service upon interested resident property owners.

2. ———: ———: ———: ———: ———. The existence of such privilege does not affect the validity of said section 5, on the ground that it contains a delegation to the court of the power to substitute the will of the court for the legislative will of the council having exclusive control of street improvements.

3. ——: ——: ——: ——: ——: CONSTITUTION: DUE PRO-
CESS OF LAW. The provision of the Kansas City amended charter
(art. 8, sec. 5), that in proceedings for the grading of a street or
alley, which are purely *in rem*, the court may acquire jurisdiction by
a publication of the ordinance in a newspaper, directed, ''To whom
it may concern,'' without naming the persons intended to be noti-
fied, is not repugnant to the constitutional provision against taking
private property without due process of law, though some of the inter-
ested parties are resident owners.

4. ——: ——: ——: ——: FINAL JUDGMENT: WAIVER. Where
such notice has been duly published and parties interested do not
appear at the proper time and object to the proceedings and present
their claims for damages, they will be held to have waived their
rights to complain of what was done and can not after four days from
final judgment have the same set aside on the ground that they were
not notified of the pendency of the proceedings.

*Appeal from Jackson Circuit Court.*—THOMAS R.
MORROW, ESQ., Special Judge.

AFFIRMED.

*Hatch & Middlebrook* for appellants.

(1) Leaving it discretionary with the circuit judge
to enforce or not, at his will, the giving of personal
notice to property owners is a delegation of power not
warranted by the constitution of Missouri. *State v.
Field*, 17 Mo. 529. (2) This law, by giving the cir-
cuit court ''an option'' whether it (the court) will give
personal notice or not, ''substitutes for, or rather adds
to, the legislative will, another will, which it makes
necessary to the existence of the law. This is unconsti-
tutional.'' Remarks of Judge Harrington in *Rice v.
Foster*, 4 Harr. 499. See, also, *Parker v. Common-
wealth*, 6 Barr (Pa.), 510; *Aurora v. U. S.*, 7
Cranch, 382. By analogy the same doctrine is held in
*Lambert v. Lidwell*, 62 Mo. 188. An exhaustive review
of this point is found in *State ex rel. Maggard v. Pond*,
93 Mo. 606, where (as in all other similar decisions) the

leading case of *State v. Field*, above quoted, is approvingly quoted, though held not applicable to the facts in 93 Mo. 606.   (3)   It will be noticed that there is a striking analogy between the facts in *State v. Field*, (17 Mo.) and the provisions of section 5, article 8, amended charter; i. e., section 5 purports to repeal or "strike out" all of old section 5 and substitute therefor the new section 5 found in the amendment, which new section virtually authorizes the circuit court in its discretion to reenact, revive, and apply old section 5, or so much thereof as provides for personal service on property owners.   [Compare sec. 5, art. 8, charter of April 8, 1889, with sec. 5, art. 8, amendment of February 27, 1892, as to personal service.]   (4)   The law as enacted in section 5, article 8, amendment to charter, does not "operate equally on every individual in the community" in this, in one case, the individuals interested may receive personal notice of the pendency of the proceedings to take their land, in another case, under precisely the same facts, other individuals may only receive constructive service, according to the discretion or whim of the court.   It all depends on how the judge may feel disposed in that respect on that day.   (5)   The amended city charter, section 5, article 8, 1892, conflicts with the general statute law of the state; i. e., with sections 312 and 314, Revised Statutes, 1889.

*Frank F. Rozzelle* and *Clarence S. Palmer* for respondent.

(1)   The publication in the paper or papers doing the city printing was proper.   The notices and advertisement referred to in section 312, Revised Statutes of 1889, are clearly those required to be made by the state law.   "Due process of law" in cases arising in the

exercise of the power of eminent domain is not necessarily the same as in common law action. Parties are not entitled to a common law jury. *Kansas City v. Hill*, 80 Mo. 523; *Railroad v. Railroad*, 118 Mo. 599. (2) Grading proceedings under the state law of 1885 as amended in 1887 could not be begun by summons issued by the clerk; the special terms of the statute must be complied with. *Williams v. Monroe*, 28 S. W. Rep. 853. (3) The jurisdiction of the court is challenged on the ground that the only notice of the proceedings was given by a notice published in a newspaper, directed, "To all persons to whom it may concern," without naming them. This is in exact conformity with the charter, section 5, article 8, charter amendments. (4) It is a general proposition of law that courts, in proceedings *in personam*, must acquire jurisdiction of the parties by service of process within the jurisdiction of the court. *Pennoyer v. Neff*, 95 U. S. 727. While some states have had legislative provisions authorizing, upon service by publication, judgments *in personam*, which would bind the property of the defendant within the jurisdiction of the court, such provisions have been declared unconstitutional in *Pennoyer v. Neff*, above cited. The same case, however, holds as to proceedings *in rem* service by publication is sufficient. (5) Sections 2022 and 2027, Revised Statutes, 1889, provide for publication in ordinary suits where the property to be affected is within the jurisdiction of the court, and ordinary service by summons can not be made. (6) The right of damages in cases of this kind is not a common law right of action. It was given by the constitution of 1875. *Hickman v. Kansas City*, 120 Mo. 110. (7) There can be no doubt, therefore, of the right of the legislature to provide proper remedy for the ascertaining of compensation of the property owner affected by the change of grade.

*Hickman v. Kansas City, supra,* and cases cited. (8) In this case, while the legislature has not acted, the charter of Kansas City is a legislative act, and this court has just held that it is the only legislative act that has any validity in proceedings of this kind. *Kansas City ex rel. v. Scarritt,* 127 Mo. 642; *Kansas City ex rel. v. Field,* 99 Mo. 352. (9) It has been held in this state under the St. Louis charter that a provision allowing commissioners to make assessments against the owners of all property which, in their opinion, will be specially benefited by the opening is valid, even in a case where no benefit district had been prescribed and no notice given to the owners of the land to be assessed with benefits. *St. Louis v. Richeson,* 76 Mo. 470. (10) In *Railway v. Hemphill,* 31 Miss. 1, it was held that a statute authorizing a jury to assemble on the land to assess damages was sufficient notice. The text writers also lay down the same rule. Mills on Eminent Domain, sec. 98; Elliot on Roads and Streets, pp. 152, 153. (11) It has been held in this state in attachment cases that after the issue and levy of the writ, some defect in publication is not fatal. *Freeman v. Thomson,* 53 Mo. 183; *Holland v. Adair,* 55 Mo. 40; *Johnson v. Gage,* 57 Mo. 160.

ROBINSON, J.—Proceedings were instituted under the amended charter of Kansas City to grade an alley from Tenth to Eleventh streets between Wyandotte and Central streets in that city. They were conducted regularly under the charter, and the verdict and report of the commissioners were duly filed and confirmed.

To pay the amount of damages allowed by reason of the proposed grading, the commissioners assessed against Kansas City the sum of $1 as the amount of the benefit the city at large would receive from the proposed grading, and the balance of the sum so awarded as dama-

ges and not assessed against Kansas City, was assessed against the property in the benefit limits prescribed in the ordinance, ordering the grading, except such pieces of private property to which damages were awarded on account of such grading where the damages exceeded the benefits assessed.

Against lot 22 owned by appellants facing on said alley $3.92 was assessed at the trial of the cause on July 30, 1892, for the ascertaining of damages and benefits to arise from the grading of the alley. Appellants failed to appear and file any claim for damages to their property, although many of the interested property owners did.

Appellants afterward filed with division number four of the circuit court where said proceedings were pending the following motion, which being overruled, appellants prosecuted this their appeal:

"MOTION TO SET ASIDE JUDGMENT, ETC.

"In the circuit court of Jackson county, Missouri, at Kansas City—October Term, 1892—Division 4—No. 14958.

"In the matter of grading the alley between Wyandotte and Central streets, from Tenth to Eleventh streets in Kansas City.

"Come now Elizabeth H. Duncan and Mary F. Duncan (and appearing specially for this purpose only) ask the court to set aside the verdict, judgment, and finding of the commissioners filed in said cause in so far as the same affects these claimants, for the following reasons, to wit:

"1.   They are now the owners in fee simple of lot 22, block 16, Ashburne's addition to the city of Kansas, which property will be damaged at least six hundred ($600) dollars by the grading as proposed by the ordi-

nance of Kansas City on which these proceedings were instituted, as said grading will cause a cut of fourteen (14) feet in the rear of plaintiffs' lot, which abuts the said alley, thereby rendering said alley inaccessible to said lot, and the improvements thereon, which said improvements are worth several thousands of dollars.

"2.   Claimants aver that they never have been notified or served in any manner of the pendency of these proceedings, and knew nothing of them until after the commissioners filed their said report in this court, when they discovered the said proceedings by a mere accident.

"Hatch & Middlebrook."

There is no claim that the proceedings in question were not taken in accordance with the charter, but the provisions of the charter are challenged as being in contravention of constitutional guaranties.

Section 5 of article 8 of the amended charter, under the head of "Power to grade streets, etc.," reads:

"Sec. 5. *Proceedings in circuit court—Notice—Service—Parties—Claims for damages to be filed.* When the mayor shall file or cause to be filed a certified copy of said ordinance in the circuit court or with the clerk thereof, such court, or a judge thereof, shall fix a day and place for assessing the damages and benefits to arise from the proposed grading or regrading, and shall make an order reciting the title of the ordinance and stating the general object and nature of the ordinance, and also stating the limits within which private property is benefited by the proposed grading or regrading as determined and prescribed by the ordinance, and said order shall be directed to all persons to whom it may concern, without naming them, notifying them of the day and place fixed for the ascertaining of damages and benefits to arise from said grading or regrad-

ing, and that unless they file their claim of damages as herein required they shall thereafter be precluded from making any claim on account thereof.   A copy of such order shall be published in each issue of a newspaper at the time doing the city printing for ten days (Sundays included), the last insertion to be not more than one week prior to the day so fixed for said hearing.   The court or judge thereof may, at the time of making said order, further order that all or any portion of the residents of the city owning or having an interest in real estate fronting on the street, alley, avenue, public highway, or part thereof, proposed to be graded or regraded, or in the real estate within the limits of the district prescribed. by the ordinance within which private property is deemed benefited by the proposed grading or regrading, be served with a copy of said order, either by delivering to each of such owners a copy of the order or leaving such copy at their usual place of abode with some member of their respective families over the age of fifteen years, and in the case of resident corporations, by service of said order in like manner as with summons in ordinary civil causes. If service of such notice can not be made on any or all of such parties as above described, within the city limits, when personal service is ordered by said court or judge, the returns on such notice shall so state. Thereupon an *alias* order, specifying a different date, may be made by said court or judge thereof in vacation, if deemed advisable, notifying such unserved parties of the facts, as in case of original notice above provided.   Said cause may be continued or postponed from time to time.   It shall not be required in any case to bring in any person other than the owners of the property or those interested therein, who were such at the time of the taking effect of the ordinance providing for the improvement, and the parties claiming

or holding through or under such owners or parties interested, or any of them, shall be bound by the proceedings as fully as if they were brought in; but any person having any interest in the real estate liable to be affected by said proceedings may, upon application and entering his appearance, be made a party thereto; but no notice of said proceedings shall be necessary to the validity thereof, except the publication of the order, as herein provided. Notice so given by publication shall be sufficient to authorize the court or judge thereof in vacation to hear and determine the cause and to make any finding or order therein as though all the parties had been sued by their proper names and had been personally served. Affidavit by the publisher, manager or any person connected with the newspaper in which such order was published, accompanied with a copy of the notice, shall be evidence of the fact of publication of the notice or order as stated therein. On or before the day next before the day set for the hearing or before the day to which said cause may have been postponed or continued as designated in either of aforesaid notices, any person claiming damages by reason of the aforesaid grading or regrading, may file, or cause to be filed, with the clerk of such court, a description of the property claimed to be damaged and the interest of the claimant therein. The clerk shall note the filing of every such claim as a part of the record of said cause. If no claim be filed before the day set for hearing of said cause, or the day to which said cause has been postponed or continued, as above provided, the court or judge, in vacation, shall make an order finding that no such claim has been filed, and thereupon the grading or regrading may then be done, and no claim for damages therefor shall thereafter be made or considered. The service of any notice or process required by this article or ordered by the court or judge thereof in vaca-

tion, may be made by a policeman of the city, or by any constable or other officer authorized to serve or return notices, and any return of service by a policeman, constable, or other officer shall be evidence of the facts therein stated.''

The notice here given was by publication only. The discretionary privilege in said section given to the court, to direct personal service, was not in this case exercised; but if it had been we can not see how that clause of the section would, as contended for by appellants, have the effect to revive and apply the provisions of old section 5 in so far as it provided that an attempt to give personal notice should be made before publication notice could run; or that it would operate as a delegation of legislative power to the court, or would operate unequally on different individuals of the community, according to the discretion of the court before whom the proceedings were pending.

The section in express terms provides that '' but no notice of such proceedings shall be necessary to the validity thereof, except the publication of the order as herein provided. Notice so given by publication shall be sufficient to authorize the court or the judge thereof in vacation to hear and determine the cause and to make any finding or order therein, as though all the parties had been sued by their proper names, and had been personally served;'' and again, '' the court or judge thereof may at the time of making said order, further order that all or any portion of the residents of the city owning or having an interest in real estate  *   *   *  be served with a copy of said order'' *   *   *,  etc.

The publication being all that was requisite to invest the court with authority to proceed in the premises, and being all, in fact, that does give that authority, the additional discretionary power (or privilege) vested

in the court by the charter, that it may further order "that all or any portion of the residents of the city owning or having an interest in real estate fronting on the street, alley, * * * be served with a copy of said order, either by delivering to each of such owners a copy of the order, etc.," could in no sense affect or impair the jurisdiction of the court acquired by the publication; or render the section obnoxious to the constitutional objection of substituting the will of the court for the legislative will of the city council having the manner and mode of conducting and carrying out of street improvements in exclusive charge.

Jurisdiction being once obtained, by the order of publication made upon the filing of the certified copy of the ordinance providing for the proposed grading by the mayor, with the clerk of the court, as provided in said section 5, that jurisdiction will not be disturbed by the exercise or nonexercise of the further privilege given to the court by said section to order personal service upon all interested resident owners, etc.; nor will the charter existence of that nonessential privilege have the effect to invalidate the section on the ground that it contains a delegation to the court of legislative power or discretion.

Nowhere in the section is there a substitution of the will of the court in authorizing personal service on the individual whose property is to be affected for the service by publication provided therein upon which the jurisdiction of the court to proceed in the matter of the assessment of damages is founded. The additional notice which may be required by the court, whether given or not, neither enlarges nor diminishes the jurisdiction of the court, and is insufficient to defeat the validity of the section. The provision, no doubt, was dictated in the act, by that considerate and frequent practice of our courts, to require by an order,

that plaintiff shall give actual notice to defendants whose whereabouts are known to be outside the jurisdiction of the court, to be affected by the judgment to be rendered upon publication notice duly authorized by express statute. That provision in the section was inserted as a mere precautionary suggestion to the court in the interest of perfect fairness, and was not intended as a delegation of power to the court, to determine which of two modes of service it would require in a given case.

Without that provision in the section the court could, under its general authority, have ordered personal service upon all the resident property owners to be affected in addition to the publication notice imperatively required by the charter, and with it included in the section, as is in this, the court could refuse or neglect to make the order; and in so doing; in nowise impair the force or validity of the judgment rendered requiring publication notice. That discretionary privilege in the charter to the court is as harmless and ineffective as if it had been omitted, and is no substitution of court authority for legislative power.

The jurisdiction of the court is next challenged by appellant on the ground that the only notice of the proceedings was given by publication in a newspaper directed, ''To all persons whom it may concern'' without naming them.

This was in exact conformity to the requirements of the charter under which the proceedings were conducted. The notice as published contained a copy of the ordinance, showing the nature of the proposed improvement and the limits within which private property might be assessed with benefits to pay the damages assessed, the time when and the place where the proceedings would be heard, and that appellants' lot was in the described limits.

This method of bringing parties into court is assailed, in the first place, because it does not name the parties.

Authorities are so numerous in this state authorizing judgments on publication notice in proceedings of this character where only property is to be affected and no judgment personal is or can be rendered against the individual property owners, that their citation at this time seems useless, and the reasons that lead to the rule unnecessary. This is a proceeding *in rem* purely. All liens chargeable against appellant's property, assessed in favor of other property, that was or may have been damaged by the proposed improvement, could be enforced against the property alone, and could in no way be as a claim personal against appellants or any other parties owning property in the limited district.

In all the states of the Union the validity of substituted service by publication, which is used to subject property within the state, belonging to nonresidents, or those whose whereabouts are unknown, to a judgment obtained by means thereof, has been sustained. Attachment, foreclosure of mortgages, partition, and such like proceedings by publication are common in all our reports, and we have been referred to no authority holding that one's right of property can not be affected by judicial proceedings, unless he has been personally served or that actual notice is essential to constitute due process of law.

While it may be conceded that a statute authorizing, upon *ex parte* proceedings, without a pretense of notice and an opportunity to appear and defend, the adjudgment of a debt or damages against a person would be in violation of the constitution, yet when the legislature has prescribed a manner of notice, as in this case, which was reasonably probable to reach the

appellants, and an opportunity was offered to come in and defend against the proposed assessment, or offer testimony as to the measure of the damages, if any, to be suffered by the proposed improvement, this court has no power to pronounce the proceeding invalid for that reason alone, and set aside the judgment entered thereon.

"Due process of law" does not mean a legal proceeding according to the course of the common law; neither does it mean that there must be personal notice to the party or parties whose property is to be affected, as contended by appellants. "Due process of law," as applied in judicial proceedings, means law in its regular course of administration through the established courts of the state, and to the legislature belongs the exclusive authority and power to prescibe the mode, means, and conditions on which proceedings affecting parties and property are to be commenced and carried on within its territory.

While the legislature would be powerless to authorize our courts to enforce judgments, where notice of no character was given, to it alone, and to no other body, does the right of saying what shall be the mode and manner of the notice to be given belong, and if it is such, as is provided in the section in question, that was reasonably probable to reach the appellants, the judgment based upon such proceedings will be sustained.

Actual notice, as where the service is authorized by leaving a copy of the process with a member of one's family over the age of fifteen years, may never be given, or actual notice in some cases, where service is by delivery of a copy of the process to defendant, may be wanting on account of the illiteracy of defendant and his inability to understand its contents, yet who would contend that the failure of the wife, child, or

servant in the first case to deliver the writ to defendant, or his inability, by reason of illiteracy, to read the warning in the second case, would defeat the jurisdiction of the court, or render invalid its judgment rendered thereon. And yet no actual notice has been given in either instance to defendant of the proceedings against him.

Notice such as in reasonable probability will reach a defendant, is all the law requires. Such notice was given appellants in this case. Their failure to observe and read the notice published in the paper after the manner provided by the charter (the provisions of which they were presumed to know) furnishes to them no better reason for an impeachment of the finding made in this case, or a denial of the court's jurisdiction therein, than would the want of actual notice to defendants in the two instances above cited.

Appellants did not file their motion in this case within four days after the rendition of the final judgment therein; nor do they ask that the judgment be set aside, as a discretion given to courts on timely motion filed, to relieve against hardships that resulted from a valid judgment; but the integrity of the judgment, on the grounds of want of authority in the court to render it, is assailed.

Again it might be said that the charter provision in question relates to and affects only the remedy and not the rights of the parties and is therefore within the scope of the legislative power. While the constitution guarantees to appellants that they shall not be deprived of their property without due process of law, and that their property shall not be taken or damaged for public use without just compensation, the remedy by which that right is to be affected is vested in the legislature, and the courts can not question the manner

provided for the giving of notice prescribed by that body.

Various prudential regulations are made with respect to those remedies, but it may possibly happen, notwithstanding all these precautions, the individual whose property is to be affected or assessed with damages may never receive actual notice or know of the proceedings. To hold, as we must, that the constitution does not absolutely require personal notice in order to constitute a legal proceeding "due process of law," the legislature then may determine the manner of constructive service that shall be sufficient to reasonably apprise the party or parties proceeded against.

The charter provision here, as in similar provisions found throughout the statutes of this and all the sister states, was dictated by the necessity of the situation, and the object to be accomplished, and rests upon the presumption that the publication notice designed to meet the eye of all, will reach the eye of those to be affected, and will stand as and for a notice to them personally. Without some such provision of law, the right guaranteed to the public by the constitution, to take or damage private property for public use and necessity, would in many cases be practically denied. Public improvements of the most important character and imperative necessity could and would in many instances be stayed, if personal notice was required to all whose property was to be affected; and the hand of the courts paralyzed to render assistance, by secret conveyances made by unscrupulous landowners to relieve their lands from its just burden of governmental support and maintenance. The constitutional provisions guaranteeing to appellants as to all others, compensation for private property taken for public use, and that same shall not be taken without due process of law, is no more sacred

than the right of the public to take or damage that property for public use and necessity.

No proposition of law is better recognized and established in this state now than that the right of the owner to his property may be affected or lost to him by a proceeding, as in this case, against the thing, upon constructive notice, whether that owner be a resident or a nonresident. If the legislature can provide a constructive notice to nonresident landowners sufficient to warrant proceedings against their property, as appellants seem to concede can be done, why can not it with equal propriety and right enact the same law to be made binding upon its own citizens?

The publication in this case was sufficient as a notice, had it reached the eye of appellants, to have warned them that proceedings were being prosecuted for public necessity, that would affect their land, and as it was after the manner prescribed by the charter, and they failed to appear at the proper time and object to the proceedings or present their claims for damages they are presumed to have waived their rights to complain of what was done under it, and can not, after four days from final judgment, by the character of motion filed herein, have same set aside, or be awarded a new hearing. The judgment of the circuit court will be affirmed. BRACE, C. J., BARCLAY and MACFARLANE, JJ., concur in result.