[No. 34879. *En Banc.* January 14, 1960.]

L. PAUL CHESKOV *et al., Appellants,* v. PORT OF SEATTLE, *Respondent,* UNITED AIR LINES, INC., *et al., Appellants.*[1]

[1]Reported in 348 P. (2d) 673.

*Zundel, Merges, Brain & Isaac* (*G. Robert Brain,* of counsel), for appellants Cheskov.

*Holman, Mickelwait, Marion, Black & Perkins, J. Paul Coie, H. Weston Foss, Karr, Tuttle & Campbell, Payne Karr, F. Lee Campbell,* and *Graham, Green & Dunn,* for appellants.

*Bogle, Bogle & Gates, Edward G. Dobrin, Stanley B. Long, Tom M. Alderson,* and *J. Kenneth Brody,* for respondent.

*Kellogg, Reaugh, Hart & Allison* and *George H. Hart, amici curiae.*

ROSELLINI, J.—The plaintiffs in this action reside upon land which they own adjacent to the Seattle-Tacoma International Airport. They seek to recover damages from the

Port of Seattle (which owns and operates the airport) for reduction in the value of their property occasioned by the noise of airplanes landing, warming up, and taking off from the field, and from the defendant airlines for trespasses over their property. The plaintiffs have appealed from a judgment dismissing their action against the Port of Seattle, and the defendant airlines have appealed from a judgment holding them guilty of technical trespasses and awarding nominal damages against each of them.

Neither the plaintiffs nor the defendant airlines having assigned error to the court's findings or to its failure to enter proposed findings, the case is before this court upon the findings of fact.

Regarding the liability of the Port of Seattle, the court found that, although the airport was lawfully operated, the property of the plaintiffs was substantially damaged, due to its proximity to the airport. In its brief, the Port assigns error to the finding of liability on its part for these damages, contending that because there was no finding of negligence or unreasonable use of its property, there was no basis on which this liability could properly be predicated. We need not consider the merits of this contention inasmuch as the court correctly found that the plaintiffs' cause of action, if such cause ever existed, was barred by the three-year statute of limitations, the first substantial damage having occurred more than three years prior to the institution of this action; and any error in the finding of initial liability was without prejudice to the defendant Port.

While there were findings that aircraft of each of the defendant airlines have on occasion flown over the plaintiffs' property at altitudes of from three hundred to five hundred feet, there is no finding that these flights have been frequent or that they have caused any actual damage to that property. The liability of the defendant Port was predicated, not on disturbance caused by the low flights of airplanes over the property nor on an appropriation of the airspace above it for airport purposes, but on depreciation of the value of the property due to the noise and vibration of airplanes warming up, taking off, and landing close by.

Consequently, there is not involved in this case a question of a taking of an air easement over the plaintiffs' property for use in connection with the airport. See *Ackerman v. Port of Seattle, ante* p. 400, 348 P. (2d) 664.

In March, 1918, this court was called upon to determine the statute of limitations applicable where there has been a taking of private property for public use (*Aylmore v. Seattle*, 100 Wash. 515, 171 Pac. 659) and where there has been, not a taking, but a damaging of private property for such use. (*Jacobs v. Seattle*, 100 Wash. 524, 171 Pac. 662). In both of these cases, it was contended by the city that the plaintiffs' actions, being actions not expressly provided for by the general statutes of limitations, were governed by the two-year statute (now RCW 4.16.130). In *Aylmore v. Seattle, supra*, it was contended, alternatively, that the action was one in trespass, to which the three-year statute was applicable. Rejecting both of these contentions, this court held that, where there has been a constitutional taking, the owner of the land or other interest taken is entitled to the benefit of the statute relating to adverse possession, inasmuch as the city could not sooner acquire the appropriated interest in the land if no action were instituted. This theory was, of course, inapplicable to a damaging of land, as opposed to a taking, but the court in *Jacobs v. Seattle, supra*, gave the plaintiff the benefit of the most favorable statute of limitations theoretically applicable, holding that where a municipality, having the power of eminent domain, damages property without having first brought an action to condemn the right to so damage it, there is an implied contract that the municipality will do that which the constitution decrees it must do and will pay just compensation for the damage done. The three-year statute (RCW 4.16.080) was therefore held to be applicable. Subsequent cases recognizing the applicability of the three-year statute are *Ackerman v. Port of Seattle, supra, Papac v. Montesano*, 49 Wn. (2d) 484, 303 P. (2d) 654, and *Gillam v. Centralia*, 14 Wn. (2d) 523, 128 P. (2d) 661.

This was the statute applied by the trial court in this case. However, the judge was apparently of the opinion that some

injustice was wrought in this case by the companion rule, that where the damage is permanent, the cause of action accrues when the first substantial damage is done and the statute begins to run from that time. *Jacobs v. Seattle, supra; Gillam v. Centralia, supra; Papac v. Montesano, supra.*

This concern of the trial court, which is shared by the plaintiffs, is voiced in the memorandum opinion, wherein the court observed that, although the evidence showed there had been substantial damage in 1951—when the airport became established as a full-scale commercial airport—the testimony did not reveal the amount of that damage with any accuracy, while there was testimony of considerably more damage in later years. Consequently, the court felt, the rule requiring the action to be brought within three years after the first substantial damage accrues, operates to deprive a landowner of the right to obtain compensation for all of the damage accruing to his property.

In this, the court either did not have in mind the proper measure of damages, which is the difference in market value of the land before the injury and immediately after (*Anderson v. Port of Seattle*, 49 Wn. (2d) 528, 304 P. (2d) 705), or assumed because the evidence of the effect on the market value was inadequate, it was unobtainable. The theory of damages is that, where a use which causes damage to adjacent property is permanent in nature, its effect upon the market value of that property is also permanent and is ascertainable at the time it becomes known that the use will continue. What effect the presence of a large commercial airport adjacent to the plaintiffs' property had upon the market value of that property at the time it was established and the character and extent of its probable operations became known, is simply a question of fact. This, it is not denied, was prior to 1951. There is nothing in the findings suggesting that the disturbances causing the damage have become different in kind or substantially greater in degree, or greater than could reasonably have been anticipated when the airport was established. In other words, the cause of action which the plaintiffs now have, so far as the find-

ings reveal, is the same as the cause they had when the airport was established, and if the evidence failed to show the full amount of damage at the time of the accrual of that cause of action, that is a deficiency in the evidence and not a defect in the rule of damages. Moreover, as we recognized in *Anderson v. Seattle, supra,* where a corporation vested with the power of eminent domain takes possession of private property (or, by the same token, damages it) in advance of eminent domain proceedings, it cannot insist that the compensation awarded be fixed as of the date of the unlawful entry. See 4 Nichols, Eminent Domain (3d ed.) 47, § 12.23 (3). In a proper case it might well be found that damages should be determined as of a later date, but that does not affect the date of accrual of the cause of action.

We conclude that the trial court correctly dismissed the plaintiffs' action against the Port of Seattle inasmuch as their cause of action, as revealed by the findings, is barred by the statute of limitations.

The airlines, on their appeal, assign error to the court's conclusion that, in making occasional flights over the property of the plaintiffs at altitudes of from 300 to 500 feet, they had been guilty of technical trespasses, entitling the plaintiffs to nominal damages even though no actual damages were shown.

The theory on which the trial court reached this conclusion is not revealed by the memorandum decision. Since there is no finding that the flights in question substantially interfered with the use and enjoyment of the plaintiffs' property or caused a diminution in its value, it must be assumed that the trial court had in mind the ancient maxim, *cujus est solum ejus est usque ad coelum.* Of this doctrine, the supreme court has said, in the leading case of *United States v. Causby,* 328 U. S. 256, 90 L. Ed. 1206, 66 S. Ct. 1062:

"It is ancient doctrine that at common law ownership of the land extended to the periphery of the universe—*Cujus est solum ejus est usque ad coelum.* But that doctrine has no place in the modern world. The air is a public highway, as Congress has declared. Were that not true, every transcontinental flight would subject the operator to countless trespass suits. Common sense revolts at the idea. To recog-

nize such private claims to the airspace would clog these highways, seriously interfere with their control and development in the public interest, and transfer into private ownership that to which only the public has a just claim."

In the *Causby* case, owners of a chicken farm which was located in line with the airport runway sued the United States, as lessor of the airport and owner of the military planes which, in landing and taking off, flew at levels of as low as eighty-three feet over the plaintiffs' land. These flights so frightened the plaintiffs' chickens that as many as six to ten of them were killed each day from flying into the walls of the enclosure in which they were kept; and the plaintiffs eventually had to give up the chicken business. The low level flights also caused the plaintiffs to become nervous and frightened and deprived them of their sleep. Accidents which had occurred near their property justified this fright. As a result of the flights, the plaintiffs' property was found to have depreciated to the extent of two thousand dollars.

At the time the *Causby* case was decided, the Congress of the United States had defined navigable airspace as "airspace above the minimum safe altitudes of flight prescribed by the Civil Aeronautics Authority" (49 U. S. C., § 180), which (depending on the type of aircraft and the character of the terrain) was 500 feet during the day and 1000 feet at night for some, and from 300 to 1000 feet for other, aircraft.

The supreme court held that the flights over the plaintiffs' land were not within the navigable airspace, as it had been defined, and because they substantially diminished the plaintiffs' use and enjoyment of their property, they constituted a taking of an easement, for which the plaintiffs were entitled to compensation.

In reaching this result, the court commented that if any airspace needed for landing or taking off were included within the navigable airspace, such flights would be immune, but even so, as the United States conceded, there would be a taking of private property for public use compensable

under the fifth amendment to the constitution of the United States.

Speaking of the flights over the plaintiffs' land in the *Causby* case, the court said:

". . . We would not doubt that, if the United States erected an elevated railway over respondents' land at the precise altitude where its planes now fly, there would be a partial taking, even though none of the supports of the structure rested on the land. The reason is that there would be an intrusion so immediate and direct as to subtract from the owner's full enjoyment of the property and to limit his exploitation of it. While the owner does not in any physical manner occupy that stratum of airspace or make use of it in the conventional sense, he does use it in somewhat the same sense that space left between buildings for the purpose of light and air is used. The superadjacent airspace at this low altitude is so close to the land that continuous invasions of it affect the use of the surface of the land itself. We think that the landowner, as an incident to his ownership, has a claim to it and that invasions of it are in the same category as invasions of the surface."

In accord with the *Causby* decision are *Delta Air Corp. v. Kersey*, 193 Ga. 862, 20 S. E. (2d) 245, 140 A. L. R. 1352; *Freeman v. United States*, 167 F. Supp. 541, *City of Newark v. Eastern Airlines*, 159 F. Supp. 750, and *United States v. 4.43 Acres of Land*, 137 F. Supp. 567.

After the *Causby* decision, in 1958 Congress, in enacting the Federal Aviation Act, 49 U. S. C. A. (1958 Sup.), § 1301 (24), redefined the term navigable airspace as follows:

". . . airspace above the minimum altitudes of flight prescribed by regulations issued under this chapter, and shall include airspace needed to insure safety in take-off and landing of aircraft."

The trial court found that the flights complained of in this suit were within the navigable airspace. It did not find that they were so low as "to subtract from the owner's full enjoyment of the property and to limit his exploitation of it," or to be a direct and immediate interference with the enjoyment and use of the land, substantially reducing its value. This being the case, under the principles laid down in the *Causby* case, the flights were within the public do-

main; and the court erred in characterizing them as technical trespasses and awarding nominal damages.

Whether the airlines would be liable for invasions of the airspace belonging to the plaintiffs, as above defined, in spite of the fact that they have no control over their flight paths in landing and taking off (these paths being determined by agents of the Civil Aeronautics Authority and by the layout of the airport) is a question not presented in this action. It would appear that the proprietor of the airport, having the power of eminent domain and the duty to provide adequate facilities for the airport operations, would bear the primary liability for invasions of this type. Whether such proprietor should alone be liable is a question which must await a proper case for decision.

The judgment is affirmed as to the defendant Port of Seattle and reversed as to the defendant airlines. The defendants are accordingly entitled to their costs herein.

ALL CONCUR.