WYOMING STATE HIGHWAY DEPART-
MENT and State Highway Commission,
Appellants (Defendants below),

v.

Frank D. NAPOLITANO and Norma
Napolitano, Appellees
(Plaintiffs below).

Frank D. NAPOLITANO and Norma
Napolitano, Appellants
(Plaintiffs below),

v.

WYOMING STATE HIGHWAY DEPART-
MENT and State Highway Commission,
Appellees (Defendants below).

Nos. 4727, 4728.

Supreme Court of Wyoming.

May 4, 1978.

Rehearing Denied June 20, 1978.

V. Frank Mendicino, Atty. Gen., Glenn A. Williams, Senior Asst. Atty. Gen., and Daniel E. White, Asst. Atty. Gen., Cheyenne, for Wyoming State Highway Dept. and State Highway Commission.

Edward S. Halsey, Newcastle, and George A. Bangs, Rapid City, S. D., for Frank D. Napolitano and Norma Napolitano.

Before GUTHRIE, C. J., RAPER, THOMAS and ROSE, JJ., and MAHONEY, D. J.

ROSE, Justice.

Two cases are here consolidated upon appeal, one of which is taken by the Wyoming State Highway Department and State Highway Commission, defendants-appellants, from a judgment entered in Weston County District Court, Sixth Judicial District. This judgment awards plaintiffs-appellees, the Napolitanos, damages of $87,-500.00 plus costs of $12.00 and sets aside a written agreement insofar as it purports to be a complete settlement for consequential damages in the taking of Plaintiffs' land for a public purpose.

The second appeal is taken by the Plaintiffs from that portion of the judgment which denied them their attorney's fees, engineering fees, expert's appraisal fees, and pre-judgment interest.

When issues were joined in the appeal first mentioned above, the Defendants filed a motion for summary judgment on the grounds that Plaintiffs had not complied with the provisions of § 9–2–332, W.S.1977 [§ 9–71, W.S.1957]. This statute provides:

"Persons having claims against the state shall exhibit the same, with the evidence in support thereof, to the auditor, to be audited, settled and allowed, within one (1) year after such claim shall accrue, and not afterward."

The trial court denied the motion for summary judgment, whereupon the parties went to trial on the issues, with the court holding generally for the Plaintiffs, except for their claim for fees. We will reverse the trial court's order overruling the Defendants' motion for summary judgment, will affirm its holding denying fees, and will not, therefore, reach the other issues.

## FACTS

At all times pertinent to this litigation, Plaintiffs were owners of property in Weston County, Wyoming, known as the Flying V Ranch, where they operated the Flying V Cambria Inn, a guest facility with restaurant and lounge. In connection with a federally assisted project on United States Highway 85 which proceeds north out of Newcastle, Wyoming, to Lead, South Dakota, the Defendants, in July and August of 1972, negotiated with Plaintiffs for a deed to a parcel of their land. The purpose of the acquisition was to permit relocation of the then-existing U. S. Highway 85, the consequence of which would be to change the relative position of the highway with respect to the Flying V Cambria Inn. Plaintiffs charged in their complaint that, during the negotiations, the authorized agents of the Defendants represented to them that the elevation of the new highway, as it approached from the south, would be no higher than the top of a certain pine tree, that, when constructed, it would be such that the lights of oncoming motor vehicles from the south would shine on the buildings of the Inn; and that the elevation of the relocated highway, as it passed the buildings, would be at the level of the foundation of a certain cabin referred to as the "big cabin." Plaintiffs' position is that, in reliance upon the representations thus made, the parties executed a Memorandum of Agreement on August 17, 1972. Under the agreement, Plaintiffs were to convey the land to Defendants for highway purposes for an acceptable and agreed-upon consideration. Accordingly, the consideration was paid and a deed was issued to the Defendants.

The Plaintiffs charge, and the trial court found, that, as actually constructed, the re-

located highway rises to as much as twenty feet above the level which the Plaintiffs contend was represented by the Defendants to be the ultimate highway elevation. The result is that passing vehicles cannot see the buildings of the Inn, and Plaintiffs charge that this has resulted in a business loss. The court agreed. Other consequential damages are claimed by the Plaintiffs and found by the court, especially having to do with the steepness of the grade going into and away from the Inn.

Appellees-Plaintiffs define the summary judgment issue in the following way:

"I

"Article 1, Section 33 of the Wyoming Constitution is self-executing and Plaintiff [sic] has [sic] a right thereunder, irrespective of sovereign immunity and independent of any legislative enactment.

"II

"The filing of a statutory notice of claim against a governmental body is unnecessary where the proceedings are in the nature of inverse condemnation and are brought as a matter of constitutional right.

"III

"Under the circumstances here present, the State of Wyoming is estopped to claim that Plaintiffs' remedy is barred by the lapse of one year from date of taking."

The trial court heard the summary judgment motion on January 19, 1976, and ruled that

" . . . the highway project here involved was not officially closed and concluded as required by law until August, 1975. Accordingly, it appears to the Court that, if the statute requiring verified claim is applicable to this proceeding in inverse condemnation, it does not clearly appear as a matter of law that a year has elapsed since the accrual of such cause of action. Accordingly, it is by the Court:

"ORDERED that Defendants' Motion for Summary Judgment be and the same is hereby denied.

"FURTHER ORDERED that the Plaintiffs may amend their Complaint on or before February 2, 1976, to allege the filing of a verified claim with the State Auditor."

The relevant "Findings of Fact and Conclusions of Law" made and found by the court on July 8, 1976, the day judgment was entered, are these:

"As a result of the increased elevation of the highway, the Southerly approach access to plaintiffs' property from the highway is so steep and dangerous as to require closing of plaintiffs' business establishment during the winter months thereby lessening the fair market value of such property."

. "As a result of the increased elevation of the highway, occupants of vehicles approaching the Flying V—Cambria Inn from both the South and the North are unable to view the buildings in which the plaintiffs operate their business. The number of transient patrons and former patrons of the plaintiffs' business has substantially declined."

"The court concludes that the signatures of the plaintiffs on Defendants' Exhibit 1 (the Memorandum of Agreement) were secured by representations concerning material facts which were untrue and upon which plaintiffs placed justifiable reliance. Accordingly the agreement should be and is hereby set aside insofar as it purports to establish the consideration paid as a complete and full satisfaction and discharge of plaintiffs' loss and damage from the acquisition of property and construction of the highway."

"The court finds and concludes that the remaining property owned by these plaintiffs has been diminished in value by the acquisition of right of way and construction of the highway in its present location in the total additional amount of Eighty-seven Thousand Five Hundred Dollars ($87,500.00) . . . ."

The pertinent and relevant dates having to do with the claim filing are:

In August of 1972, the Defendants obtained a right-of-way from the owners of the Flying V. In August, 1973, Plaintiffs complained to a foreman working for the

construction company that the highway was being laid out at a location different from that represented by the right-of-way negotiator for the State Highway Department, and in the spring of 1974, Plaintiffs made a similar contact with a Highway Department employee. Both men represented that they were building the road according to plans. On October 16, 1974, the relocated highway was opened for traffic.[1] Plaintiffs wrote Defendants on July 23, 1975, alleging misrepresentations at the time the agreement was entered into and threatened action for rescission to force a re-evaluation. This letter does not purport to be a formal claim. In August, 1975, notice of highway final acceptance by the Highway Commission, was published. On September 18, 1975, the parties met to discuss the Plaintiffs' objections—on October 1, 1975, the Defendants wrote a letter denying Plaintiffs' demands, and on November 13, 1975, the Plaintiffs filed their complaint for damages, in response to which the Defendants filed their answer on December 3, 1975. On December 22, 1975, Defendants filed a motion for summary judgment, alleging failure to comply with § 9–2–332, supra, which motion was, on January 22, 1976, overruled, with the court granting the Plaintiffs authority to amend their complaint to allege the filing of a verified claim with the State Auditor. The amended complaint was filed on January 22, 1976, alleging that on or about December 29, 1975, Plaintiffs had filed a verified claim with the State Auditor for damages—a fact which is supported by the record.

## THE ISSUES

*Section 9–2–332, W.S.1977, requires the filing of a claim where it is contended the contract has been breached by the State or its agents:*

Throughout the record and the briefs, the Wyoming State Highway Department and State Highway Commission have argued that as a condition precedent to bringing this action—whether it be in contract or inverse condemnation—it is required that a claim under § 9–2–332, supra, must first be filed. The Defendants go on to argue that since the claim was not timely filed, the court erred in overruling the motion for summary judgment. It is the position of the Napolitanos, on the other hand, that this is not an action upon the contract but is one in inverse condemnation and § 9–2–332 does not apply. In the alternative, they urge that no matter how the cause of action is identified, the filing of their claim was, in fact, timely.

We have specifically addressed this issue in *Utah Construction Co. v. State Highway Commission*, 45 Wyo. 403, 19 P.2d 951 (1933). In *Utah Construction*, supra, the contractor was seeking increased payment under the contract, with the only form of claim submitted being a letter from the contractor to the State Highway Commission. There had been no claim filed with the State Auditor as required by the statute. We held that even though the statute authorizes suits against the Highway Commission on the contract, this does not relieve the claimant of the obligation to comply with the claim statute. We said:

"   .   .   . The statute giving the right to sue the state highway commission on its contracts cannot be given a meaning that would permit an invasion of the mandatory constitutional provision (article 16, § 7) that prohibits the audit, allowance, or payment of a claim until it has been filed with the auditing officer. The statute authorizing suit does not purport to repeal or modify section 109–305, supra, requiring claims to be exhibited to the auditor within one year after they

---

1. While the final judgment of the district court refers to November 22, 1974, as the date when the project in question was finally accepted by the Highway Department, there is no evidence in the record to support such a finding. The only evidence on this point is a reference to November 22, 1972, when the final pre-construction plans were approved. Even if the November, 1974, date was supported by the evidence and was relevant for our purpose, it would have no effect on our holding that the Plaintiffs' claim was untimely—since the claim was still filed more than a year after this time.

accrue 'and not afterward.' . . ."
19 P.2d, at 953.[2]

We concluded in *Utah Construction,* supra, 19 P.2d at 955, by saying:

"We are of opinion, therefore, that the filing of the plaintiff's claim with the auditing officer was a condition precedent that could not be waived, and, as the petition does not show that the condition had been performed, the demurrer was properly sustained."

See, also, *Price v. State Highway Commission,* 62 Wyo. 385, 167 P.2d 309, 312, where the condition-precedent rule was adopted in a negligence action. We reaffirmed the rule of *Utah Construction,* supra, and *Price,* supra, when we said, in *Awe v. University of Wyoming,* Wyo., 534 P.2d 97, 102:

"In the face of well-established law in Wyoming that the filing of such a claim under § 9–71 is a condition precedent to suit, we are hesitant to reverse the holdings of *Utah Construction,* supra, and *Price,* supra. We recognize that the requirement as interpreted by those cases was judicially created because no statute specifies that the claim is a condition precedent to suit, but we re-affirm their holdings. . . ."

Under the authorities above cited, the filing of a claim as provided by statute would have been a condition precedent to the prosecution of the litigation if the action had been on the contract—or in tort.

*Inverse condemnation and the claim-filing statute:*

*(a) Are consequential damages compensable?*

The Napolitanos urge that the damages claimed are consequential to their remaining property rights and emanate from the failure of the Highway Department to perform according to its representations with reference to the highway elevation. They say that the business would not have been injured had promises been kept, but, be-

cause they weren't, the business has suffered and that this consequential damage came about through a taking for which they have a right to be compensated.

Article 1, Section 33, of the Wyoming Constitution, provides:

"Private property shall not be taken or damaged for public or private use without just compensation."

Plaintiffs argue that this constitutional provision is self-executing and that the legislature cannot enact statutes which deprive persons of property rights guaranteed thereby. The argument goes on to make the point that, to the extent the claim-filing statute, § 9–2–332, W.S.1977, does this, it is unconstitutional.

The court found that Plaintiffs did suffer compensable damages of the nature claimed. We hold that such damages are compensable under the guarantee of Article 1, Section 33, supra.

The rule is said to be:

"Under the constitutional provision which requires payment of compensation when property is damaged, consequential damages may be recovered . . . Under this provision property is damaged when it is made less valuable, less useful, or less desirable. (The measure of damages in such case is the difference between the fair market value before and after the inflicting of the damage.) Hence, it is immaterial whether such damage occurs by reason of the construction or the maintenance of the project, so long as it is directly attributable to such causative factor, and irrespective of whether there has been an actual physical taking of any part of such property. The depreciation in value, however, must be by reason of damage to the land itself or to property rights therein. Personal inconvenience or discomfort to the owner, or interference with the business conducted on the land, is not compensable *unless*

---

**2.** Article 16, Section 7, provides:

"No money shall be paid out of the state treasury except upon appropriation by law and on warrant drawn by the proper officer, and no bills, claims, accounts or demands against the state, or any county or political

sub-division, shall be audited, allowed or paid until a full itemized statement in writing, certified to under penalty of perjury, shall be filed with the officer or offices whose duty it may be to audit the same."

*such results are causative factors in the depreciation in the value of the land. . . ."* 4A Nichols on Eminent Domain, Sec. 14.1(1), pp. 14–19, et seq. [Emphasis supplied]

Support for Napolitanos' position is found in *Hirt v. City of Casper*, 56 Wyo. 57, 103 P.2d 394 (1940). This case concerned a challenge of a jury's award of damages in a condemnation proceeding. The issue was whether the appellants, who owned property abutting on a local street, could recover damages for interference with their right of ingress and egress as a result of the street construction. The claimant's property was not physically taken. We interpreted Article 1, Section 33, of the Wyoming Constitution as protecting plaintiff's easement to the street when we said:

". . . The term 'damaged' used in the constitution, and the term 'injuriously affected' used in the various sections of the statute, are synonymous. *Rigney v. Chicago*, 102 Ill. 64; *Gottschalk v. Chicago, B. & Q. R. Co.*, 14 Neb. 550, 16 N.W. 475, 17 N.W. 120. In other words, the statutes of this state recognized the fact, prior to the adoption of the constitution, that in a proceeding of eminent domain compensation should be made not only for property actually and physically taken, but also for damages which would be sustained by reason of the exercise of the power. The constitution merely confirmed a rule which had already previously been adopted by the legislature. . .

". . . [W]e find that to interfere with an easement, such as is involved in the case at bar, is, in essence, an injury or damage, to the property owned by the abutting property owner, and that, in turn, in essence, is a taking in the broad sense of that term, which must be compensated for under our constitution, unless countervailing reasons to the contrary exist. . . ." 103 P.2d, at 398–399.

We upheld a verdict for consequential damages in *State Highway Commission v. Peters*, Wyo., 416 P.2d 390. The reason such damages were denied in *Sheridan Drive-In Theatre, Inc. v. State*, Wyo., 384 P.2d 597, was because there was no proof that the highway relocation damaged the remaining property of the plaintiff. We did not, in that case, reject the concept.

In sum, we agree with the Plaintiffs that such consequential damages to the remaining property as are complained of here are compensable under the protection afforded by Article 1, Section 33, of the Wyoming State Constitution.

*(b) The statutory claim must be filed in an inverse condemnation proceeding.*

■ As we have said, the Plaintiffs urge that, if the filing was not timely under § 9–2–332, W.S.1977, this omission is not fatal because Article 1, Section 33, is self-executing. Article 16, Section 7, of the Wyoming Constitution commands the filing of claims with the officer or offices whose duty it may be to audit the same before money can be paid out of the State Treasury, and this section of our constitution is of equal dignity with Article 1, Section 33, which prohibits the taking or damaging of property without just compensation. In fact, the two provisions are not in conflict. The rights afforded by Article 1, Section 33, are protected even though the directive of Article 16, Section 7, are complied with, since Article 16, Section 7, is no more than a regulation of the procedure by which the rights guaranteed by Article 1, Section 33, will be exercised. It is not a substantive limitation imposed upon such rights.

The Napolitanos rely upon the authority expressed by those courts which have found that state statutes requiring a timely filing of claims with a particular state official are not a condition precedent to suits against the state in inverse condemnation. This is an extension of the philosophy that such constitutional provisions as those found in Article 1, Section 33, are self-executing. Generally, the states which have come to this conclusion have done so upon the theory that the constitutional right to just compensation is beyond legislative destruction. The theory behind the argument is that constitutional provisions which assure citizens their right to recover from the state

for property taken are limitations on the state government's power and, therefore, the state cannot restrict a limitation which has been placed upon it. *Alexander v. State*, 142 Mont. 93, 381 P.2d 780; *State ex rel. Herman v. Mestas*, 12 Ariz.App. 289, 469 P.2d 855; *Armbruster v. Stanton-Pilger Drainage District*, 165 Neb. 459, 86 N.W.2d 56; *Boitano v. Snohomish*, 11 Wash.2d 664, 120 P.2d 490; and *Decker v. State*, 188 Wash. 222, 62 P.2d 35.

States which have held that claim-filing statutes *are* capable of limiting the time in which one must seek just compensation in inverse condemnation cases approach the problem from the standpoint of the reasonableness of the limitation. California, in *City of San Jose v. Superior Court of Santa Clara County*, 12 Cal.3d 447, 115 Cal.Rptr. 797, 525 P.2d 701, specifically has held that their claim statute applies to cases of inverse condemnation.

In *City of San Jose*, supra, the California Supreme Court said:

> "The claims statutes provisions apply to actions brought both for nuisance and for inverse condemnation. (*Bellman v. County of Contra Costa* (1960), 54 Cal.2d 363, 369, 5 Cal.Rptr. 692, 353 P.2d 300; *Dorow v. Santa Clara County Flood Control Dist.* (1970), 4 Cal.App.3d 389, 391, 84 Cal.Rptr. 518; *Mosesian v. County of Fresno* (1972), 28 Cal.App.3d 493, 495, 104 Cal.Rptr. 655.) The fact that inverse condemnation is founded directly on the California Constitution (art. I, § 14) neither excuses plaintiffs from compliance with the claims statutes (*Powers Farms v. Consolidated Irr. Dist.* (1941), 19 Cal.2d 123, 126, 119 P.2d 717; *Dorow v. Santa Clara Flood Control Dist.*, supra, 4 Cal. App.3d 389, 391–392, 84 Cal.Rptr. 518), nor renders the claims statutes unconstitutional. (*Crescent Wharf, etc., Co. v. Los Angeles* (1929), 207 Cal. 430, 278 P. 1028; *Dorow v. Santa Clara County Flood Control Dist.*, supra, 4 Cal.App.3d 389, 391–392, 84 Cal.Rptr. 518.)" 115 Cal. Rptr. at p. 802, 525 P.2d, at 706.

We discussed the problem at hand in *North Laramie Land Co. v. Hoffman*, 30 Wyo. 238, 219 P. 561, 572, aff'd, 268 U.S. 276, 45 S.Ct. 491, 69 L.Ed. 953. In this case, a landowner-plaintiff sought a restraining order against the county's taking a part of his land for road purposes. The statute provided for objections or claims for damages to be filed within a time period to be established by a board. In compliance, a date was set and notice given that all objections or claims for damages had to be filed by June 7, 1917. Plaintiff, however, filed objections and his claim for damages on June 30, 1917. Several days later, the county commissioners executed and filed a document which purported to be an extension of the time for filing such objections. Since the statute providing for the filing of objections did not include the authority for the Board of County Commissioners to extend the time period after it was initially set, the objection was held to be untimely.

Plaintiff argued that the statute could not

> "impose upon an owner whose property is sought to be taken in eminent domain proceedings a condition that, in order to be entitled to compensation, he must file a claim therefor."

Cited in support of this contention were cases from Washington and Nebraska, the Supreme Court of Nebraska having held that claim statutes do not affect inverse condemnation actions. We noted that the Nebraska case argued by the plaintiff dealt with a constitutional provision identical to that of Wyoming on eminent domain, but these cases did not persuade us that this should be the law of this state. We concluded that as long as the damages are payable absolutely in highway proceedings, ample provision exists under our laws for ultimate payment. We found this sufficient to satisfy the requirements of the constitution. The opinion contemplates that the entity in charge of the highway construction is entitled to know the claims made and objections entered at a time which would then enable that entity to determine whether or not to place the burden of the expense of construction upon the taxpayers. The court did

"not feel justified in holding a law requiring the presentment of a claim for damages within a given time as unconstitutional when, . . . reasonable provision has been made and reasonable opportunity has been given, after notice, for the landowner to do so. . . ."

In so holding, we cited the following authority: *Wabash, etc., R. Co. v. Defiance*, 52 Ohio St. 262, 305, 40 N.E. 89, and other Ohio cases cited; *Brookville, etc., Co. v. Butler*, 91 Ind. 134, 46 Am.St.Rep. 580; *Kansas City v. Duncan*, 135 Mo. 571, 37 S.W. 513; *Petet v. McClanahan*, 297 Mo. 677, 249 S.W. 917; *Sala v. Pasadena*, 162 Cal. 714, 124 P. 539; *Potter v. Ames*, 43 Cal. 75; *Taylor v. Drainage District*, 167 Iowa 42, 148 N.W. 1040, L.R.A. 1916B, 1193; *State v. Messenger*, 27 Minn. 119, 6 N.W. 457; *Simms v. R. R. Co.*, 59 Tenn. 621; *Bost v. Cabarrus County*, 152 N.C. 531, 67 S.E. 1066; *Wabash, etc., R. Co. v. Defiance*, 167 U.S. 88, 17 S.Ct. 748, 754, 42 L.Ed. 87; 20 C.J. 871, 872, and Nichols, Eminent Domain, § 344.

■ Having in mind the *North Laramie Land Company* case, and other authority which stands for the reasonableness of § 9–2–332, when tested against Article 1, Section 33, we are compelled to the conclusion that § 9–2–332 applies to inverse condemnation claims—and so hold.

### (c) The claim was not timely filed.

The court permitted the Plaintiffs to amend their complaint to show a filing of their claim with the State Auditor on December 29, 1975. On October 16, 1974, the relocated highway was open for traffic. Assuming, arguendo, that the Plaintiffs were not chargeable with the notice which they must have had when they were complaining to the Highway Department and contractor personnel in August, 1973 and the Spring of 1974, it can hardly be contended that they did not have actual notice of the taking of which they complained, as evidenced by the permanent position, grade and elevations of the relocated highway, when it was released for use by traffic on October 16, 1974. More than fourteen months elapsed between this event and the 29th of December, when the claim was filed with the State Auditor. The statute requires the filing of the claim with the Auditor within one year after

"such claim shall accrue. . . ."

When, then, does the claim accrue?

Several decisions rendered by California courts have concerned themselves with this issue. Two such cases are *Robinson v. Southern California Ry. Co.*, 129 Cal. 8, 61 P. 947, and *Williams v. Southern Pacific R. Co.*, 150 Cal. 624, 89 P. 599. *Robinson* was an action to recover damages for taking a 100-foot-wide strip of land, and constructing thereon a railroad track. In deciding the date the cause of action commenced, the court said:

". . . The complaint alleges an unlawful taking of possession in May, 1887. *The damages alleged accrued at least as soon as the road was built and operated, which was in 1889.* The complaint was filed August 11, 1899, and we think the action was barred . . . ." [Emphasis supplied] 61 P., at 948.

*Williams*, supra, also concerned an unlawful entry upon land for the purpose of constructing a railroad track without having first obtained the consent of the plaintiff-landowner. The California Supreme Court stated the following, at 89 P. 599:

". . . The appellant seeks to avoid the bar of the statute by the contention that, since the injury complained of . . . was in its nature continuing, a new cause of action arose at each moment of its continuance, and that successive actions might be brought, in each of which the plaintiff might recover damages accruing up to the time of the commencement of the action. This rule is properly applicable in cases where the injury or trespass is temporary in character, . . . On the other hand, where the injury or trespass is of a permanent nature, all damages, past and prospective, are recoverable in one action, and the entire *cause of action accrues when the injury is inflicted or the trespass committed.* . . ." [Emphasis supplied]

The *Robinson* and *Williams* decisions, supra, were cited in *Pierpont Inn, Inc. v. State*, 70 Cal.2d 282, 74 Cal.Rptr. 521, 449

P.2d 737, in which the California Supreme Court ruled that the claim period provided for in section 644 of the Government Code began to run from *the date of completion* of a freeway project.

In *Mosesian v. County of Fresno*, 28 Cal. App.3d 493, 104 Cal.Rptr. 655, the plaintiffs contended that their claim for damages in inverse condemnation did not accrue until they had substantive knowledge that a pond constructed on their land was a permanent improvement. The court rejected this argument when it said:

"The amorphous concept of when a cause of action arises in an inverse condemnation claim has been treated in a number of cases. Notwithstanding some inconsistencies in the language of the cases, each makes clear that the time is not limitless. None supports Mosesians' contention that though a taking is objectively total and the improvement complete, the time for filing a claim is postponed until the claimant is subjectively convinced the taking is permanent rather than temporary. . . ."

The court also noted that even accepting the plaintiffs' contention, the claim did not accrue until they had subjective knowledge of the permanence of the pond, and, therefore, the claim was still barred. The court ruled that the plaintiffs had such subjective knowledge in 1969, when they first made a written demand upon the county. The court said:

". . . As their knowledge of the permanence of the taking was in excess of one year prior to filing of the claim in February 1970, plaintiffs' claim is barred by the claims statute even if it be assumed the law permits postponement until the claimant subjectively knows the taking is permanent." 104 Cal.Rptr., at 662.

*Cheskov v. Port of Seattle*, 55 Wash.2d 416, 348 P.2d 673, was an inverse condemnation action brought by landowners who resided adjacent to Seattle International Airport seeking to recover compensation for the reduction of market value caused by noise, dust, and vibration of aircraft operations. The airport was established in 1951 and over the years until the commencement of the action, traffic gradually increased. The Washington Supreme Court held that the action was barred by a three-year limitations period. In regard to the time when the plaintiffs' claim accrued, the court said:

"The theory of damages is that, where a use which causes damage to adjacent property is permanent in nature, its effect upon the market value of that property is also permanent and is ascertainable at the time it becomes known that the use will continue. What effect the presence of a large commercial airport adjacent to the plaintiffs' property had upon the market value of that property at the time it was established and the character and extent of its probable operations became known, is simply a question of fact. This, it is not denied, was prior to 1951. There is nothing in the findings suggesting that the disturbances causing the damage have become different in kind or substantially greater in degree, or greater than could reasonably have been anticipated when the airport was established. In other words, the cause of action which the plaintiffs now have, so far as the findings reveal, is the same as the cause they had when the airport was established, and if the evidence failed to show the full amount of damage at the time of the accrual of that cause of action, that is a deficiency in the evidence and not a defect in the rule of damages . . . where a corporation vested with the power of eminent domain takes possession of private property (or, by the same token, damages it) in advance of eminent domain proceedings, it cannot insist that the compensation awarded be fixed as of the date of the unlawful entry. See 4 Nichols, Eminent Domain (3rd Ed.) 47, § 12.23(3). In a proper case it might well be found that damages should be determined as of a later date, but that does not affect the date of accrual of the cause of action." 348 P.2d, at 676.

The above-discussed cases, while occasionally mentioning "acceptance," primarily emphasized the date of completion. They speak in terms of "when the taking is ap-

parent or discoverable," or "when there is substantial interference resulting in a decline in market value." The courts appear to reject the substantive-knowledge [of the plaintiff] test in favor of a more objective test such as the date of completion. This indicates a time when the plaintiff knows or should have known that the taking and damage is complete. The completion of the highway and resultant re-routing of traffic (October, 1974) provide such an objective date. The Plaintiffs herein were, or should have been, aware of the damage and its permanence at this time. Nothing of significance occurred—with respect to damages—between that date and the time when the highway was formally accepted. The Plaintiffs themselves used October, 1974, as the valuation date for damages. A road completion date, which involves a re-routing of traffic, does not give rise to speculation as to Plaintiffs' awareness of damages, as would be the case with the earlier dates (August, 1973, and Spring, 1974), when Plaintiffs expressed their initial complaints.

The Plaintiffs knew that the taking for which they seek damages was complete when traffic was re-routed on October 16, 1974. The fact is—they surely knew of the taking when they complained to the contractor's employee and the Highway Department's employee in August of 1973 and the Spring of 1974. But, even though this may be subject to argument and explanation, there can be no question but that they had knowledge of the permanent taking, with its attendant damage, when the traffic was re-routed on October 16, 1974. It was then their duty to file a claim within a year of that date as provided by statute. This was not done and, therefore, the motion for summary judgment should have been sustained.

Reversed.